Joan **GUGLIELMONI**

v.

James **ALEXANDER, et al.**

Civ. No. B–81–521 (PCD).

United States District Court,
D. Connecticut.

March 23, 1984.

Richard J. Shapiro, Weinstein & Weiner, Bridgeport, Conn., for plaintiff.

Patricia M. Strong, Asst. Atty. Gen., Hartford, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Even in a case potentially of constitutional magnitude, counsel's pretrial preparation and presentation of the relevant factual and legal analysis can be, lamentably, insufficient either to hone the issues for a crisp and efficient trial or, where appropriate, to provide for the disposition of the matter short of trial. The instant motion for summary judgment, filed in this civil rights case after the expiration of the court's scheduling order, must be denied. While plaintiff's opposing memorandum, filed after two lengthy extensions of time, takes issue with defendants' principal contentions only in a conclusory manner and is unaccompanied by the documentation required by the relevant federal and local rules,[1] defendants have not borne their burden of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Plaintiff has conceded that the claim for loss by decedent's parents of the love and affection of their son, set forth in Count Three, paragraphs 14 and 15, and Count Four, paragraph 11, cannot stand. The motion of defendants for summary judgment is granted, in part, with respect to these claims. Without prejudice to renewal upon a clearer presentation of the record, such as one would hope might be available at least by the close of evidence, defendants' motion is otherwise denied.

### Introduction

Plaintiff, administratrix of her intestate son's estate, alleges that her decedent's civil rights were violated when inadequate supervision and treatment provided during his incarceration at the Bridgeport Community Correctional Center (BCCC) resulted in his suicide. The defendants move for sum-

---

1. Rule 56(e), Fed.R.Civ.P., provides in part:

   When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

   Local Rule 9(d), Rules of Civil Procedure, U.S. District Court for the District of Connecticut, provides further that:

   The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

   By failing to provide any such materials, plaintiff has come dangerously close to the entry of summary judgment against her. But as noted in the text below, certain deficiencies in defendants' presentation and apparent factual inconsistencies counsel against the entry of summary judgment at this time.

mary judgment, asserting: (1) the complaint fails to state a claim upon which relief can be granted, inasmuch as no federal constitutional or statutory right is implicated by the facts and conduct in question; (2) any such federal right as may be implicated cannot give rise to money damages, inasmuch as the defendants, or some of them, either (a) enjoy qualified immunity or (b) cannot on the basis of the complaint and record be held liable in a supervisory capacity for any omissions in regard to any unconstitutional actions by subordinates; (3) plaintiff lacks standing to assert any claim in her individual behalf for deprivation of her decedent's love and affection, as any such claim is not a protectible right under the Civil Rights Act; (4) this action is barred in whole or part by the relevant statute of limitations and in the case of one defendant by failure to serve him within a reasonable time of the filing of the complaint; and (5) the claims asserted to be within the pendent jurisdiction of this court should be dismissed in view of a Connecticut Superior Court disposition of a related proceeding.

*Parties*

The plaintiff is Joan Guglielmoni, mother of the decedent, Mario Guglielmoni, Jr. Suing in her capacity as her intestate's administratrix, plaintiff seeks compensatory and punitive damages for alleged violations of Mario Guglielmoni's civil rights during his imprisonment, based on the failure to prevent his suicide.

The defendants are as follows: [2]

(a) James Alexander, a psychiatric consultant under contract with the Connecticut Department of Correction to provide psychiatric services at BCCC.

(b) Joseph Williams, a correctional officer at BCCC.

(c) John R. Manson, at all relevant times and until his death on September 13, 1983, Commissioner of the Department of Correction of the State of Connecticut.[3]

(d) Victor Liburdi, the warden at BCCC.

*Facts*

The record is less than complete for a proper determination of which of those facts claimed to be uncontroverted by defendants are genuinely disputed by plaintiff. Nonetheless, the following summary reflects facts not genuinely in dispute.

On May 22, 1979, at the age of twenty-three, Mario Guglielmoni, Jr. (Guglielmoni) was sentenced by the Superior Court to a prison term of one year, to be served at BCCC, for the crime of threatening in violation of Conn.Gen.Stat. § 53a–62. Prior to this sentence, he had served several shorter prison terms for a variety of offenses—including possession of marijuana, possession of weapons in a motor vehicle, larceny, and burglary—dating back to early 1974.

Guglielmoni's behavior during his BCCC incarceration was far from exemplary and included several lengthy disciplinary stints in segregation or isolation.

On August 30, 1979, a BCCC corrections officer found Guglielmoni hanging from the light in his cell, a shoelace around his neck. Basically unharmed, he was removed from his cell, placed in isolation, and referred to Dr. Alexander for a psychiatric consultation.

---

**2.** The caption of the complaint fails to identify the capacity or capacities in which each or any one of the defendants issued. Personal service was made upon all but defendant Manson, who was served as a state official through the Attorney General. Conn.Gen.Stat. § 52–64. Paragraph one asserts that the action is directed against the Department of Correction as well as certain of its employees and officials, but the department was neither named nor served nor indeed could it be found liable in a § 1983 action for money damages by virtue of the eleventh amendment. The language of the complaint evidences a contemplation that the defendants are sued in their official and individual capacities.

**3.** No efforts have been made to substitute for the deceased defendant nor does the record contain a suggestion of death so as to trigger the 90-day period during which a motion for substitution may be made and in the absence of which the action shall be dismissed as to the deceased party. Fed.R.Civ.P. 25(a)(1).

Dr. Alexander, who had provided psychiatric treatment to Guglielmoni both privately and in his capacity as contract psychiatric consultant at BCCC over the course of several years, interviewed the inmate that same day. He found Guglielmoni to be non-psychotic, and concluded[4] that the attempted hanging was a manipulative gesture without active suicidal ideation or intent, motivated by Guglielmoni's desire to be transferred to a hospital facility. Dr. Alexander prescribed medication and noted that transfer for psychological reasons was not indicated.

On October 30, 1979, Guglielmoni was observed with a torn bedsheet around his neck which he appeared to be attempting to tie to the cell bars. Again he was placed in isolation and referred to Dr. Alexander, who saw him on November 1, 1979, and concluded[5] that this incident was similarly a feigned, manipulative gesture directed at securing a transfer. Hospitalization for psychological reasons was not deemed warranted. Guglielmoni was then returned to segregation.

According to Department of Correction directives, any inmate in segregation or isolation, such as Guglielmoni during the entire period in question except for one week in October, was to be checked regularly and frequently[6] by correctional staff, medical, and supervisory personnel. Log sheets maintained on Guglielmoni, at least

for the periods August 30, 1979—August 31, 1979, and commencing October 30, 1979, after the second incident, suggests that this policy was effectuated on these dates.

On November 3, 1979, at about 2:40 p.m., Guglielmoni was observed by another inmate hanging from the light fixture in his cell, a shoelace around his neck. He was pronounced dead shortly thereafter, a suicide.

The instant action was filed as a single-count complaint on October 29, 1981, seeking compensatory and punitive damages for the allegedly inadequate medical treatment given Guglielmoni at BCCC by the defendants, both generally insofar as the defendants allegedly failed to promulgate rules or policies to prevent suicides and specifically insofar as they allegedly failed to insure the safety of Guglielmoni. A "Third" and "Fourth" Count were added to the complaint, adding some detail to the recitations of the original complaint, characterizing Dr. Alexander's conduct as reckless and wanton, and purporting in part to assert claims on behalf of the decedent's parents individually.[7]

On defendants' present motion for summary judgment, it is incumbent on the court to consider all the pleadings and other filings in the light most favorable to plaintiff, the non-moving party. The bur-

---

**4.** An inconsistency arises between Dr. Alexander's contemporaneous notes of this interview, on a form 111 progress sheet, and his subsequent answers to interrogatories as to whether, after this incident, Guglielmoni said he had "faked hanging himself in order to be transferred" or that another inmate had tried "to do him in," or both.

**5.** The progress notes are silent as to the basis for this conclusion. The response to interrogatories states that Guglielmoni lucidly explained his manipulative—rather than suicidal—intent, and Dr. Alexander found this consistent with his past course of treatment of the inmate.

**6.** According to the affidavit of defendant Liburdi, correctional staff was to check any inmate in segregation or isolation every thirty minutes. The log sheet used for the period of August 30, 1979—August 31, 1979, and October 30, 1979—

November 3, 1979, refers to a policy whereby such checks were to be effectuated every two hours. The explanation for this discrepancy is unclear; conceivably, the log sheets used were drafted before the thirty-minute policy took effect.

**7.** Apparently, this two count amendment was also submitted to the state court in connection with a two-count state action sounding in negligence brought by plaintiffs against the four defendants herein. Before the amendment in the state action was considered, and in the absence of an opposing memorandum from plaintiff, the state action was dismissed on grounds of the immunity from suits for negligence enjoyed by employees of the State of Connecticut, in the performance of their duties and within the scope of their employment, Conn.Gen.Stat. § 4–165. *Guglielmoni v. Alexander*, Sup.Ct.J.D. Fairfield at Bridgeport, 11/1/82 (Belinkie, J.).

den on defendants is to show there is no genuine issue as to any material fact and that they are therefore entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). That burden is somewhat heightened where, as here, constitutional and other questions of significant public import may be involved, as these especially should not be decided on an inadequate factual basis. 10A Wright & Miller, *Federal Practice & Procedure* §§ 2732, 2732.2. Notwithstanding that the factual gaps presently on the record are in large part attributable to plaintiff's own apparent lack of zeal and meticulousness in prosecuting this action, prudence and the above admonitions counsel against granting defendants' motion.

Defendants' argument will be treated seriatim.

1. *The Eighth Amendment Claim*

■ "When a state imposes imprisonment as a punishment for crime, it accepts the obligation to provide persons in its custody with a medical care system that meets minimal standards of adequacy." *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983). The Supreme Court has clearly held that prison authorities have a constitutional duty to provide needed medical care for inmates and deliberate indifference to serious medical needs of prisoners violates the eighth amendment's proscription of the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). A constitutional claim is stated under the eighth amendment's standards of human dignity, *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958), when prison officials intentionally deny access to medical care or interfere with prescribed treatment. *Todaro v. Ward*, 565 F.2d 48 (2d Cir.1977); *see, e.g., Corby v. Conboy*, 457 F.2d 251 (2d Cir.1972); *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir.1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971).

■ As there is "no sound underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart," *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir.1977), the "deliberate indifference" standard of *Estelle* is equally applicable to the constitutional adequacy of psychological or psychiatric care provided at a prison. *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir.1979). Treatment of mental disorders of mentally disturbed inmates is thus a "serious medical need" under *Estelle; Wellman*, 715 F.2d at 272; *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

■ The "deliberate indifference" standard implicitly requires assessment of states of mind in order to determine the constitutional adequacy of inmate medical care. *State Bank of St. Charles v. Camic*, 712 F.2d 1140 (7th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 491, 78 L.Ed.2d 686 (1983). Isolated negligence or malpractice is insufficient to state an *Estelle* claim. Deliberate indifference exists when action is not taken in the face of a "strong likelihood, rather than a mere possibility," that failure to provide care would result in harm to the prisoner. *Id.* at 146; *Matje v. Leis*, 571 F.Supp. 918 (S.D.Ohio W.D.1983). Yet, as the Second Circuit noted in *Todaro*, 565 F.2d at 52:

... while a single instance of medical care denied or delayed, viewed in isolation, may appear to be the product of mere negligence, repeated examples of such treatment bespeak a deliberate indifference by prison authorities to the agony engendered by haphazard and ill-conceived procedures. Indeed it is well-settled in this circuit that 'a series of incidents closely related in time ... may disclose a pattern of conduct amounting to deliberate indifference to the medical needs of prisoners.' *Bishop v. Stoneman*, 508 F.2d 1224 (2d Cir.1974).

Defendant's eighth amendment argument is two-pronged. As "[n]either the Supreme Court nor this court has expressly held that there is a constitutional right to be protected from suicide," *State Bank of St. Charles*, 712 F.2d at 1145 n. 3, defendants first argue that the complaint fails to

state a § 1983 claim under *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), inasmuch as it fails to allege that the conduct complained of deprived plaintiff of any right, privilege, or immunity secured by the Constitution or laws of the United States.

■ This argument is without merit. Just as the eighth amendment reaches psychiatric care as a component or aspect of medical care, so too is protecting inmates from themselves as an aspect of the broader constitutional duty to provide medical care for inmates. Defendants' research failed to uncover a recent case squarely facing this question and flatly rejecting the proposition for which defendants contend:

> It is clear that prison authorities have a constitutional duty to provide needed medical care for inmates. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 ... (1976). Defendants acknowledge this general proposition, but submit that the duty does not extend to protecting inmates from themselves. While there is a certain appeal to their contention, it fails. Defendants omit from their discussion any mention of *Scharfenberger v. Wingo*, 542 F.2d 328 (6th Cir.1976). There, the court was faced with a case where a prisoner had been injured by injection with a drug provided him by the prison infirmary. The evidence was far from clear as to whether he had administered the injection to himself, or whether it had been done by the infirmary staff. The court noted that

> > Defendants expend considerable effort seeking to prove that Scharfenberger injured himself. We regard this issue as irrelevant because a prisoner's custodians cannot lawfully deny him adequate medical care even in instance of deliberate self injury.

*Matje*, 571 F.Supp. at 930.

■ Accordingly, to the extent defendants' motion is predicated on failure of the complaint to state a cognizable § 1983 claim inasmuch as the eighth amendment does not reach instances of deliberate self-injury, it is denied.

Assuming *arguendo* that a right to be protected from suicide exists under *Estelle*, defendants next claim that there is no genuine issue of material fact as to whether such a right was abrogated here. Defendants essentially contend that "if an Eighth Amendment right to be protected from suicide exists, it was not abrogated in this case because the defendants' lack of knowledge and their exercise of reasonable precautions precludes any possibility of their actions being characterized as deliberate or callous indifference." *State Bank of St. Charles*, 712 F.2d at 1146.

The briefs and record presented by the parties manifest certain inconsistencies and gaps which preclude the granting of summary judgment on this ground. While the record does not suggest, as a matter of law, that plaintiff has proven any allegations of unconstitutional malfeasance or nonfeasance on the part of any of the defendants, neither can it be concluded on the present record, as a matter of law, that there is no genuine issue so as to warrant summary judgment for the defendants.

■ Defendants argue that there is no genuine dispute but that the care provided Guglielmoni was constitutionally adequate. Mere negligence in the administration of medical treatment to prisoners is not itself actionable. Failure to provide adequate treatment violates the eighth amendment only when it is the result of "deliberate indifference" to a "prisoner's serious medical needs." While a court will not ordinarily "second guess" treatment or diagnoses, "in some cases the medical attention rendered may be so inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976). Further, while federal courts have traditionally adopted a broad hands-off attitude towards the daily problems of prison administration, such a policy cannot "encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution," *Procunier v. Martinez*, 416 U.S. 396, 406, 94 S.Ct. 1800, 1808, 40 L.Ed.2d 224 (1974), especially where matters of medical care are involved, as opposed to matters of prison discipline and security. *Todaro*, 565 F.2d at 53–54.

Defendants rely on *State Bank of St. Charles*, 712 F.2d 1140, but that case is readily distinguishable from the instant case. There, an individual, within hours of a motor vehicle arrest, committed suicide while incarcerated in a city jail by ripping his shirt and making a rope with which he hanged himself. The administrator of his estate sued including an eighth amendment claim. The trial court granted defendants' motion for summary judgment. The Seventh Circuit noted that, although the defendant police officers knew that the detainee was intoxicated, uncooperative and assaultive, they had no actual knowledge that there was a suicide risk, nor that he was an unreasonably high suicide risk. Reasonable precautions to guard against self-infliction of harm were shown in the defendants removing the prisoner's belt and shoelaces. Thus, it was held that absent any suggestion in the record to the contrary, any applicable eighth amendment right to be protected from suicide could not be said to have been violated. In effect, on the record there was no evidence to suggest that the officers' conduct could possibly be characterized as deliberate or callous indifference.

In the case at bar, the plaintiff has failed to suggest the existence of genuine issues by offering, or pointing to, specific evidence that presents the existence of a substantiated dispute which can only be resolved at trial. It should be obvious in the discussion that follows that the close analysis of the record to put the plaintiff's claim in the strongest light has not been done by counsel, and in default thereof the onus has fallen to the court. The superficial analysis of both sides which has left issues unaddressed has been less than that to which the parties should be entitled.

■ There are three aspects of the record which have been unexplored by counsel and which, on the present record, preclude the granting of the motion. Plaintiff should be slow to take solace in this decision because it may well be that her limp over the barrier of defendant's motion may not clear the procedural hurdle of subsequent proceedings including trial. The record contains the following:

(a) Plaintiff's decedent hung himself with shoelaces. Their source is not shown. Plaintiff's claim that they were Guglielmoni's is not sustained in the record. Defendants' contribution to the record does not rule out plaintiff's claim. The record shows two prior attempts—whether feigned or otherwise—at suicide before the success. That creates a notice that perhaps decedent should not have had access to shoelaces. As defendants have not foreclosed their being responsible for that access under the "deliberate" or "callous indifference" standard, their motion cannot be granted.

(b) Defendants were obliged to scrutinize plaintiff's decedent periodically. There are, in the inspection log, two entries crucial in point of time, being the last two, apparently reading "Resting," which are scratched out. Such entries, the fact of the attempt to alter the record, and the circumstances and motivation behind the attempt, raise serious questions concerning the conduct of the persons involved. The record in this respect leaves enough unanswered questions as to preclude the court from finding there are no issues for trial.

(c) While there is evidence as to the care provided, there is no basis for finding the quality of that care in any absolute source. Thus, the court cannot find, in the record, without question, that the care was in compliance with the constitutionally mandated standards of care. While at trial the burden is on the plaintiff to prove noncompliance, the burden at this proceeding is on the defendants to disprove any reasonable inference of noncompliance. That they have not done. *See Matje*, 571 F.Supp. 918.

In each of these respects the record is more or less neutral. The plaintiff has failed to show by affirmative evidence her ability to establish her claim in any one or more of these respects. Defendants have not placed in the record any disproof of each of these as a potential basis for plaintiff's recovery. Therefore, their motion in these regards cannot be granted.

### 2. *The Qualified Immunity and Supervisory Responsibility Claim*

Defendants have further contended that any § 1983 liability is precluded by the qualified immunity standard of *Procunier v. Navarette*, 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978), and *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2739 (1982), on two grounds discussed above, namely: there is no clearly established constitutional right to be protected from suicide; and even if there were, the officials' conduct was demonstrably objectively reasonable at the time of their alleged conduct.

The standard of *Estelle*, applicable here as discussed above, was clearly established at the times in question. In addition, it is impossible to conclude as a matter of law at this time that defendants have met their burden to show that their conduct could not be found to be deficient for the reasons discussed above. Accordingly, the shield of *Harlow* cannot be decided on the present record.

Defendants' further argument that the complaint against Warden Liburdi and Commissioner Manson is insufficient under *Monell v. Department of Social Serv.*, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978), is without merit. The acts or omissions claimed against the supervisory defendants under § 1983 are within the reach of *Estelle*, 429 U.S. at 108, 97 S.Ct. at 293. They suffice to state a claim of deliberate indifference in medical care. While plaintiff has hardly established facts on which to prove this claim, as discussed above, defendants have not established the converse as necessary to merit the granting of their motion. Accordingly, partial summary judgment on the basis of *Monell* may not be granted.

### 3. *The Standing Claim*

■ Defendants further contend that the claims for damages for Guglielmoni's parents' loss of the love and affection of their son, relief in paragraphs 14 and 15 of the Third Count and paragraph 11 of the Fourth Count, cannot be pursued by Guglielmoni's mother who here sues as administratrix of his estate. Plaintiff concedes that such damages cannot be awarded in this § 1983 action. *See Evain v. Conlisk*, 364 F.Supp. 1188 (N.D.Ill.E.D.1973), *aff'd*, 498 F.2d 1403 (7th Cir.1974). Accordingly, with respect to the claims asserted in those paragraphs, partial summary judgment is granted.

### 4. *The Statute of Limitations and Service of Process Claims*

■ Defendants further contend that this action is governed by the one-year time limitation for claims against the state. Conn.Gen.Stat. § 4–148. This action was filed within two years next following the acts and omissions complained of. It is not at all clear that § 4–148 could control, on the present record, as opposed to the statute of limitations governing the most nearly analogous state cause of action, a wrongful death action, Conn.Gen.Stat. § 52–555 (two years). *See Board of Regents v. Tomario*, 446 U.S. 478, 100 S.Ct. 1790, 1791, 64 L.Ed.2d 440 (1980).

Anticipating this conclusion, defendants would apply the two-year limitations period such that it expired before the amended complaint was filed, thus making the additional pendent counts time-barred. Such result is flatly contradictory to the doctrine of "relation back," Fed.R.Civ.P. 15(c), and this argument must be rejected.[8]

Defendant Williams was not served within the two years. The complaint was filed in court within the two years. It is a matter of record that a problem was encountered in arranging for service of process. No prejudice can be said to have been caused Williams by the delay. The court finds that service was made within a

---

**8.** Defendants' recitation in the reply brief of language from *United States v. Northern Paiute Nation*, 393 F.2d 786 (Ct.Cl.1968), for the proposition that Rule 15(c) does not apply to amendments which add new causes of action wholly fails to recognize that the rules embrace a broadened concept of "cause of action," shifting the emphasis from a *theory* of law as to the

reasonable period of the filing of the complaint and denies the motion as it is premised on this ground.

### 5. *State Court Disposition of Related Claim*

Finally, defendants appear to state that Counts Three and Four, the pendent counts added by amendment, ought to be dismissed by reason of a state court dismissal of essentially the same action in 1981. On the record,[9] the legal effect of the state court action is not at all sufficiently clear to grant this motion at this time.

Accordingly, except as to the conceded third ground on this present record, defendants' motion for summary judgment is denied.

SO ORDERED.

cause of action to the specified *conduct* or operative *facts* upon which plaintiff relies to enforce his claim; 3 Moore's *Federal Practice* ¶ 15.15[3], at 15–198 (2d ed. 1983). The language of the rule plainly applies here: "Whenever the claim ... asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

9. Contrary to defendants' assertion in this motion, it would appear that the state court action was dismissed before a would-be third and fourth count, presumably identical to those added here, was considered. Thus, it is doubtful defendants could fashion a convincing argument as to the preclusive effect of the state court action as to these two counts here.