Alex **STRANDELL**, Individually, and as father, and as Administrator of the Estate of Michael Strandell, deceased; Marge Strandell, Individually, and as mother of Michael Strandell, deceased; and the Estate of Michael Strandell, deceased, Plaintiffs,

v.

**JACKSON COUNTY, ILLINOIS;** William Kilquist, Individually, and in his official capacity as Sheriff of Jackson County; Gene Truitt, Individually, and in his official capacity as Jail Superintendent of Jackson County; Steve Michaels, Individually, and in his official capacity as a Deputy Jailer of Jackson County; Robert Davenport, Individually, and in his official capacity as a Deputy Jailer of Jackson County; James Staffey, Individually, and in his official capacity as a Deputy Sheriff of Jackson County; Henry Pierce, Individually, and in his official capacity as a Deputy Jailer of Jackson County; and John Doe and Richard Roe, Individually, and in their official capacities as members of the Board of Jackson County, the identity and number of whom is presently unknown to plaintiffs, Defendants.

Civ. No. 85–4159.

United States District Court,
S.D. Illinois,
Benton Division.

May 9, 1986.

Richard E. Boyle, Gundlach, Lee, Eggmann, Boyle & Roessler, Belleville, Ill., Thomas F. Tobin, Gerald L. Maatman, Jr., John W. Dondanville, Baker & McKenzie, Chicago, Ill., for plaintiffs.

Richard A. Green, Feirich, Schoen, Mager, Green & Associates, Carbondale, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on defendants' Motion to Dismiss and/or Strike the Complaint, and on plaintiffs' Motion for Class Certification. The case arises from a March 17, 1984 incident in which Michael Strandell committed suicide by hanging himself in a cell at the Jackson County, Illinois Jail. Plaintiffs, Alex and Marge Strandell, bring the instant suit on their own behalf and as the parents of Michael Strandell. Alex Strandell also sues as administrator of his son's estate. Plaintiffs seek relief pursuant to 42 U.S.C. § 1983 for violations of their son's constitutional rights, and for violations of their own constitutional rights. In addition, plaintiffs seek injunctive relief on behalf of all pretrial detainees who have been and/or who will be confined at the Jackson County Jail. The complaint also sets forth pendent state law claims under the Illinois Wrongful Death Act, the Illinois Survival Act and the Illinois Family Expense Act.

### Factual Allegations

The Court initially notes that for purposes of defendants' motion to dismiss, all allegations in the complaint must be accepted as true. The complaint should not be dismissed unless "it is clear that no relief

could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King and Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984).

Plaintiffs allege the following facts. On March 17, 1984 at approximately 5:00 a.m., Michael Strandell, the decedent, was a passenger in a car that was involved in an accident in DeSoto, Illinois. Steven Mowatt, the driver of the vehicle, was arrested for driving on a suspended license, and both Mowatt and the decedent were transported to the Jackson County Courthouse. The decedent, who was severely intoxicated, verbally protested the jailing of his companion, and upon doing so, was arrested by James Stafey, a Deputy Sheriff for Jackson County. The basis for the arrest was disorderly conduct.

Plaintiffs allege that defendant Stafey used unjustified and excessive force in effectuating the arrest and in moving plaintiff to a cell within the jail facility. Specifically, plaintiffs allege that Stafey hit the decedent, that he then dragged the decedent into an elevator where he continued to beat and strike him, and that upon arriving at the third floor, he pushed the decedent off the elevator and dragged him to the booking area. Stafey and Steve Michaels, a Deputy Jailor, continued to strike and push the decedent, and then forcefully stripped decedent of his clothing. Defendants Stafey and Michaels subsequently dragged the decedent (by holding his wrists and ankles) to the main cell block, and threw him into a cell naked and alone, and without a mattress, pillow or blanket.

After being thrown into this cell, the decedent began to scream and to beat his head and body against the bars and walls of the cell. Defendant Michaels yelled, "Shut up, or we'll beat your ass some more," but the decedent's screaming continued. Approximately one-half hour later, Michaels and Stafey forcefully removed the decedent from his cell, dragged him to one of the isolation cells, and forcefully threw him into such a cell naked and alone. The decedent continued to scream and to beat his head and body on the walls and bars of the isolation cell. According to the complaint, defendants Stafey, Michaels, Robert Davenport and Henry Pierce (also Deputy Jailors) ignored the decedent's screams, the beating of his head and body on the jail cell walls and bars, and his pleas to be seen by a doctor. These defendants also failed to monitor the condition of the decedent, despite their knowledge that in the past, jail inmates had used the bars at the top of the isolation cells to hang themselves. Sometime after noon on March 17, 1984, the decedent, using the overhead bars as an anchoring device, committed suicide by hanging himself with a noose that had been fashioned from a bed sheet.

*Totality of Conditions at the Jackson County Jail*

Plaintiffs allege that the totality of conditions at the Jackson County Jail violated the decedent's due process right to be free from punishment. Defendants have moved to strike all allegations pertaining to the physical conditions of the jail, as well as all allegations pertaining to the underfunding of the jail facility, on the basis that these allegations fail to state a cause of action under the fourth or fourteenth amendments.

The Court initially notes that motions to strike are disfavored "and are not granted unless the language in the pleading at issue has no possible relation to the controversy and is clearly prejudicial." *Mitchell v. Bendix Corporation,* 603 F.Supp. 920, 921 (N.D.Ind.1985). Furthermore, a motion to strike is an improper method for procuring dismissal of all or part of the complaint. *Pierson v. Dean, Witter, Reynolds, Inc.,* 551 F.Supp. 497, 504 (C.D.Ill. 1982).

In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court held that pretrial detainees have a right under the fourteenth amendment's due process clause to be free from punishment. *Id.* at 535 n. 16, 99 S.Ct. at 1872 n. 16. "The detainee's right to be free from punishment ... includes the right not to be subjected to conditions imposed for the pur-

pose of punishment." *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984).

Plaintiffs allege that the overcrowding and understaffing at the Jackson County Jail have resulted in a lack of adequate patrol procedures, and that because of these conditions, defendants were unable to properly monitor the decedent and to respond to his medical needs and suicide. They further allege that the physical condition of the jail facility and the lack of procedures for identifying and treating suicidal and emotionally disturbed detainees violated the decedent's liberty interest in bodily safety and physical security. Finally, plaintiffs allege that the above conditions are a direct result of inadequate funding.

Other decisions have recognized that such conditions may violate a detainee's right to be free from cruel and unusual punishment. For example, in *Matzker v. Herr,* the Seventh Circuit recognized that "the right to be free from cruel and unusual punishment is violated if the jailers fail to establish adequate patrol procedures." *Matzker,* 748 F.2d at 1150. Similarly, in *Madden v. City of Meriden,* 602 F.Supp. 1160 (D.Conn.1985), the court held that a pretrial detainee's "confine[ment] in a jail cell without adequate surveillance, and without the removal of implements enabling him to take his own life" violated his fourteenth amendment right to liberty. *Id.* at 1164. *See also Soto v. City of Sacramento,* 567 F.Supp. 662 (E.D.Cal.1983) (placement of pretrial detainee in isolation cell with dangerous condition violated his due process rights when defendants knew that this condition had previously resulted in suicides and attempted suicides).

■ The Court concludes that plaintiffs' allegations regarding the totality of conditions at the jail are relevant to plaintiffs' claim that the decedent was deprived of his due process right to be free from punishment. Defendants' motion to strike all allegations relating to the totality of conditions is therefore denied. The Court further finds that plaintiffs' allegations are sufficient to withstand a motion to dismiss.

Applying the standard set forth in *Hishon v. King and Spaulding,* it is not clear that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2233. Therefore, to the extent defendants move to dismiss the allegations in question for failure to state a cause of action under the fourteenth amendment, the defendants' motion is denied.

*Minimal Standards for Jails as Established by Illinois Statutes and Regulations*

Plaintiffs allege that defendants violated the decedent's liberty interest in an expectation of certain minimal standards for the physical condition of the jail facility, and in an expectation of treatment that protects the safety, health and well-being of pretrial detainees. (Plaintiff's Complaint, ¶ 77(j)). Defendants move to strike all references in the complaint to "minimal standards for the physical condition of the jail" on the basis that a violation of the minimal standards, as established by Illinois regulations, fails to state a cause of action under the fourth or fourteenth amendments.

In *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982), the court held that prison regulations and policies could give rise to a constitutionally protected liberty interest. *Id.* at 1099. Other courts have reached similar holdings. For example, in *Williams v. Lane,* 548 F.Supp. 927 (N.D.Ill.1982), prisoners in protective custody alleged that defendants had violated an Illinois regulation requiring prison officials to provide "[h]ousing and programmatic accommodations ... comparable to those provided for the general population." *Id.* at 932. The court held that the regulation established a limited liberty interest in "comparable accommodations" for prisoners placed in protective custody. *Id.* And in *Matzker v. Herr,* 748 F.2d 1142 (7th Cir.1984), the court specifically referred to the Illinois County Jail Standards in determining whether a pretrial detainee's eighth amendment rights had been violated. *Id.* at 1147.

The Illinois County Jail Standards provide that detainees shall be assigned to suitable quarters, that emotionally disturbed detainees shall be kept under constant supervision, and that "suspected disturbed" detainees shall be immediately examined by a physician. Ill.Admin.Reg. ch. IV and VII (7/11/80). The Court concludes that the mandatory language of these regulations creates a protected liberty interest in an expectation of certain minimal standards and treatment. The Court further finds that plaintiffs' complaint sufficiently alleges a deprivation of that liberty interest in violation of the fourteenth amendment. Defendants' motion to strike all references to "minimal standards" at the Jackson County Jail is therefore denied.

## Claims Against Specific Defendants

### A. Jackson County Board Members

Defense counsel moves to dismiss as defendants all members of the Jackson County Board on the basis that 1) the allegations fail to show any personal involvement by the members of the Board, and 2) there are no allegations of any act by any member of the Board in an individual capacity. Since the plaintiffs have not yet identified or served any Board members, the court reserves its judgment until such time as those defendants have been identified.

### B. Other Defendants

The defendants have moved to strike and/or dismiss various parts of the complaint on the basis that the allegations fail to demonstrate the personal involvement of certain defendants. Specifically, defendants first move to strike and/or dismiss paragraphs 77(a)–(f) as to all defendants except Stafey (and in some instances Michaels) since no facts are alleged to show the personal involvement, with respect to these allegations, of any other defendant. However, the Court agrees with plaintiffs that defendants have misconstrued paragraph 77 of the complaint. (See Plaintiffs'

Reply, p. 2 n. 1). The allegations set forth in paragraphs 77(a)–(f) do not necessarily apply to each and every defendant. Rather, plaintiffs have set forth, in paragraphs 38–62 of the complaint, the basis of each constitutional violation, *and have identified the particular defendant or defendants involved in each constitutional violation.* The description of each defendant's "role" (as set forth in paragraphs 38–62) makes it clear that paragraphs 77(a)–(f) are not applicable to every defendant. Defendants' motion to strike and/or dismiss these paragraphs is therefore denied.

The Court notes that in their motion to dismiss and accompanying memorandum, defendants do not dispute that Stafey, Michaels, Davenport and other unknown deputies and jailors (presumably including Henry Pierce)[1] were personally involved, in varying manners, with the violation of decedent's rights during his arrest and detention. However, in moving to dismiss paragraphs 77(a)–(f) of the complaint as to all defendants except Stafey and Michaels, defendants appear to dispute the personal involvement of Kilquist, Truitt and Jackson County in the deprivation of decedent's right to be free from preconviction punishment and from unjustified intrusions upon his physical security. To the extent that defendants so move, their motion to dismiss is denied.

In *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court held that municipalities cannot be liable for the acts of its employees under a theory of respondeat superior. Municipal liability may only be imposed for unconstitutional actions that are inflicted pursuant to a governmental "policy or custom." *Id.* at 694, 98 S.Ct. at 2037. Plaintiffs allege that various policies and customs of Jackson County caused the decedent to be deprived of his constitutional rights. According to plaintiffs, these policies include 1) opera-

---

**1.** In an amended complaint filed February 12, 1986, Henry Pierce, a Deputy Jailor, was added as a defendant. Pursuant to an order entered by this Court on February 3, 1986, the defendants' Motion to Dismiss is applicable to Henry Pierce where appropriate.

tion of an overcrowded and understaffed jail facility, 2) placing suicidal and/or emotionally disturbed pretrial detainees in jail cells having known and obvious anchoring devices for suicide attempts, and 3) continual and consistent underfunding of the jail facility resulting in unsafe and dangerous conditions at the jail. (Plaintiffs' Complaint, ¶ 71).

In *Mayes v. Elrod*, 470 F.Supp. 1188 (N.D.Ill.1979), plaintiff, a pretrial detainee, alleged that he had been subjected to inhumane living conditions while confined at the Cook County Jail and that defendants failed to protect him from attack by other inmates. The court held that a "continuing pattern of underfunding county programs" qualified as a "custom" under *Monell*, and that Cook County should therefore not be dismissed as a defendant. *Id.* at 1192–93. The court further held:

> *Persistent maladministration or non-enforcement of mandatory duties* can provide the fodder for a claim of an official custom. Such failures when they occur with sufficient frequency, systematically deny citizens the full protection of existing law. We therefore conclude that plaintiff's complaint adequately alleges a custom within the scope of § 1983.

*Id.* at 1193 (emphasis added). Similarly, in *Holland v. Breen*, 623 F.Supp. 284 (D.Mass.1985), the court held that plaintiff, who sued after her son committed suicide at the police station, stated a cause of action against the town of Falmouth by alleging that "defendants failed to provide adequate, monitored facilities to protect inmates, and that the defendants' acts and omissions caused [her son's] death." *Id.* at 290.

■ In the present case, as in *Mayes* and *Holland*, plaintiffs allege not only that Jackson County provides inadequate funding for its jail facility, but also that it has failed to maintain the jail facility in conformity with state law and constitutional standards. The Court finds that the allegations in the complaint are sufficient to satisfy the "custom" requirement, and that

plaintiffs have therefore stated a cause of action against Jackson County. *See also Littlefield v. Deland*, 641 F.2d 729 (10th Cir.1981) (failure of County to adequately fund county jail or to oversee general policies of jail constituted "policy of indifference" sufficient to hold County liable under section 1983).

■ Likewise, plaintiffs have sufficiently pled a cause of action against Kilquist, the Sheriff of Jackson County, and against Truitt, the chief jailor and jail superintendent of the Jackson County Sheriff's Department. Plaintiffs allege that these defendants provide inadequate treatment for suicidal and emotionally disturbed detainees, and that they have failed to maintain the jail facility in accordance with statutory and constitutional standards. (Plaintiff's Complaint, ¶¶ 70 and 72). Plaintiffs also allege, with respect to defendants Kilquist and Truitt, that "the training and supervision of jail officers in the arrest, confinement, treatment and monitoring of suicidal, intoxicated, and/or emotionally disturbed pre-trial detainees is grossly inadequate or non-existant...." (Plaintiffs' Complaint, ¶ 70).

In *Mayes* and *Holland*, the courts held that similar allegations were sufficient to state a cause of action against a chief of police and a county sheriff. As noted in *Holland*, "[a]lthough 'mere failure to supervise is not a basis for liability under § 1983,' liability will result 'if delinquent supervision is so severe as to amount to gross negligence or deliberate indifference to constitutional violations.'" *Holland*, 623 F.Supp. at 290 (citations omitted). *See also Lenard v. Argento*, 699 F.2d 874, 886 (7th Cir.1983) (also noting that supervisor may be liable for constitutional deprivations by employees if supervisor's inaction amounts to "deliberate indifference or tacit authorization of the offensive acts").

Defendants also contend that because the decedent committed suicide, no act of any defendant caused the decedent to be deprived of his life. Defendants therefore move to strike or dismiss paragraph 77(i) of the complaint, which alleges that decedent

was deprived of his life without due process of law.

In *State Bank of St. Charles v. Camic*, 712 F.2d 1140 (7th Cir.1983), a case also involving the suicide of a pretrial detainee, the court suggested that if an eighth amendment right to be protected from suicide does in fact exist, a violation of that right could be found only upon a showing that defendants acted with deliberate indifference. *Id.* at 1146. The court did not expressly decide whether there is a constitutional right to be protected from suicide, noting that neither the Supreme Court nor the Seventh Circuit has yet resolved that question. *Id.* at 1145 n. 3. Other courts, however, have expressly held that such a right does exist.

In *Guglielmoni v. Alexander*, 583 F.Supp. 821 (D.Conn.1984), a case involving the suicide of a prison inmate, the court held that "[j]ust as the eighth amendment reaches psychiatric care as a component or aspect of medical care, so too is protecting inmates from themselves ... an aspect of the broader constitutional duty to provide medical care for inmates." *Id.* at 827. Similarly, in *Holland* and *Madden*, cases also involving the suicides of pretrial detainees, both courts held that plaintiffs had sufficiently alleged acts of deliberate indifference by defendants, and that the factual allegations, if proved, could result in a finding that the decedents were wrongfully deprived of their fourteenth amendment rights to life and liberty. *Holland*, 623 F.Supp. at 288–89; *Madden* 602 F.Supp. at 1164.

■ In the present case, plaintiffs allege that defendants placed the decedent in isolation despite his depressed and irrational state, and despite the fact that other detainees had committed (or attempted to commit) suicide in the isolation cells. Plaintiffs further allege that defendants failed to monitor and treat the decedent despite his obvious suffering. Plaintiffs also allege that defendants Jackson County, Kilquist and Truitt failed to provide safe, monitored facilities for suicidal and emotionally disturbed detainees, and that they failed to adequately train the jailors and deputies to deal with suicidal detainees. The Court concludes that plaintiffs have sufficiently alleged acts of deliberate indifference by defendants, and that the complaint adequately alleges the personal involvement by defendants in the deprivation of decedent's right to life.

■ With respect to Jackson County, the Court specifically notes that similar allegations were held to state a claim of municipal liability in both *Holland* and *Madden*. *See Holland*, 623 F.Supp. at 290; *Madden*, 602 F.Supp. at 1168. Accordingly, defendants motion to strike and/or dismiss plaintiffs' claim that decedent was deprived of his life without due process is denied.

### The Effect of Parratt v. Taylor

Neither side has addressed the effect of the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) on plaintiffs' claim that the decedent was deprived of his life without due process of law. The Court, however, believes that a discussion of that case is warranted.

In *Parratt*, the Supreme Court held that the deprivation of property under color of state law does not constitute a violation under 42 U.S.C. § 1983 if adequate post deprivation remedies are available in the state courts. *Id.* at 543–44, 101 S.Ct. at 1917. The reasoning of *Parratt* applies to both negligent and intentional deprivations of property. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984).

The Seventh Circuit, in *State Bank of St. Charles v. Camic*, 712 F.2d 1140 (7th Cir. 1983), suggested that the reasoning of *Parratt* also applies to deprivations of life. In *St. Charles*, a pretrial detainee committed suicide in the city jail, and the administrator of the estate sued for violation of the decedent's rights under the eighth and fourteenth amendments. The court stated that if *Parratt* applied, plaintiff's fourteenth amendment claim was foreclosed since the Illinois wrongful death statute

provided an adequate remedy for one suing on behalf of the estate of a prisoner who committed suicide. *Id.* at 1147. Although other decisions have cited *St. Charles* for the proposition that *Parratt* applies to deprivations of life, this court agrees that "the opinion [in *St. Charles*] makes clear that the court was unsure about the reach of *Parratt* and based its judgment [granting defendants' motion for summary judgment] on alternative holdings." *Doty v. Carey,* 626 F.Supp. 359, 361 n. 3 (N.D.Ill.1986).

Assuming that the *St. Charles* decision does hold that *Parratt* applies to deprivations of life, it is nonetheless clear that *Parratt* is inapplicable to deprivations of *substantive* constitutional rights. *See Bell v. City of Milwaukee,* 746 F.2d 1205, 1238 n. 39 (7th Cir.1984); *St. Charles,* 712 F.2d at 1147 n. 5; *Doty,* 626 F.Supp. at 361; *Kufalk v. Hart,* 610 F.Supp. 1178, 1190 (N.D.Ill.1985). Furthermore, in *Bell v. City of Milwaukee,* a case involving the fatal shooting of a young man by a police officer, the Seventh Circuit expressly held that an intentional or reckless deprivation of life by the state violates a *substantive* constitutional right. *Bell,* 746 F.2d at 1238 & n. 39. (*Bell's* holding was apparently based on the substantive rights guaranteed by the due process clause of the fourteenth amendment. *See Doty,* 626 F.Supp. at 362 n. 4). The court did not apply *Parratt,* but instead held that plaintiffs had valid due process claims despite the existence of the Illinois wrongful death statute. *Id.* at 1238. Therefore, to the extent that *St. Charles* bars claims for deprivations of life if a state wrongful death action is available, *Bell* appears to supersede this holding. *See also Doty,* 626 F.Supp. at 361 n. 3 (also suggesting that the holding in *Bell* supersedes *St. Charles*).

Additionally, in those cases involving suicides by pretrial detainees, the courts have held that allegations of reckless indifference (to the detainee's life and safety) are sufficient to state a valid *substantive* due process claim, and that *Parratt* is therefore inapplicable. For example, in *Holland v. Breen,* 623 F.Supp. 284 (D.Mass.1985), a case involving the suicide of a pretrial detainee, the court first noted that "[s]ubstantive due process is based on the 'right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court.'" *Id.* at 288. The court then held that because plaintiff had sufficiently alleged facts that "shocked the conscience," the complaint stated a valid substantive due process violation, and application of *Parratt* was not warranted. *Id.* at 288–89. *See also Madden v. City of Meriden,* 602 F.Supp. 1160, 1166–68 (D.Conn. 1985) (substantive due process violation found where pretrial detainee committed suicide and where plaintiff alleged that defendants' actions were willful, deliberate and malicious).

■ Likewise, plaintiffs in the present case allege that defendants acted with callous and deliberate indifference to the decedent's life and safety. The Court concludes that plaintiffs have asserted a valid substantive due process claim and that *Parratt* is therefore not applicable.

## Punitive Damages

■ Defendants contend that an award of punitive damages to Michael Strandell's estate contravenes the Illinois Wrongful Death Act, which prohibits the administrator of an estate from receiving punitive damages. The Seventh Circuit, however, has expressly held that state laws precluding or limiting recovery for loss of life are inconsistent with the compensatory and deterrent policies underlying section 1983. In *Bass by Lewis v. Wallenstein,* 769 F.2d 1173 (7th Cir.1985), the court held:

> [W]here the constitutional deprivation sought to be remedied has caused death, state law that precludes recovery on behalf of the victim's estate for the loss of life is inconsistent with the deterrent policy of section 1983.... *"To disallow punitive damages in Section 1983 actions solely on the basis of restrictive state tort law would seriously hamper the deterrence effect of Section 1983."*

*Id.* at 1190 (citing *Bell v. City of Milwaukee*, 746 F.2d 1205, 1240–41) (emphasis added). Therefore, defendants' motion to strike the prayer for an award of punitive damages to the estate is denied.

■ Defendants also move to strike the prayer for punitive damages in Counts I and II on the basis that in section 1983 actions, juries may award punitive damages only when the defendant's conduct is reckless or motivated by evil intent. Defendants cite *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) for the proposition that punitive damages are recoverable under section 1983 only "when the defendants' conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights." *Id.* at 33, 103 S.Ct. at 1628. Plaintiff's allege throughout the complaint that defendants acted with callous and deliberate indifference. These allegations are clearly sufficient to withstand defendants' motion to strike and/or dismiss.

■ Defendants further move to strike the prayer for punitive damages in all counts on the basis that imposition of punitive damages in civil cases violates the due process clause of the fourteenth amendment. In *Smith*, however, the Supreme Court expressly held that punitive damages are recoverable in section 1983 actions. Defendants' motion to strike all prayers for punitive damages is accordingly denied.

Finally, defendants move to dismiss the claim for punitive damages under the Illinois Wrongful Death Act and under the Illinois Survival Act. Plaintiffs concede that recent Illinois decisions prohibit recovery of punitive damages under both acts. (Plaintiff's Reply, p. 14). Defendants' motion to dismiss the prayer for punitive damages in Counts III and IV is therefore granted.

*Prejudgment Interest*

In Counts I and II, which are based on 42 U.S.C. § 1983, plaintiffs request an award of prejudgment interest. Defendants move to strike plaintiffs' request on the basis

that Illinois law prohibits an award of prejudgment interest in tort cases.

In *Furtado v. Bishop*, 604 F.2d 80 (1st Cir.1979), *modified on other grounds*, 635 F.2d 915 (1st Cir.1980) the court addressed the question of whether prejudgment interest could properly be awarded in a section 1983 case. The court held that it was unnecessary to decide "between a rule making prejudgment interest discretionary and one barring it altogether." *Id.* at 98. Instead, the court held that "federal law dictate[s] that the *jury* should decide whether to assess [prejudgment interest]." *Id.* (emphasis added). At least one other court in this circuit has adopted *Furtado's* holding that in section 1983 cases, the question of prejudgment interest is one to be decided by the jury. *See Bell v. City of Milwaukee*, 536 F.Supp. 462, 479 (E.D.Wis. 1982), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 1205 (7th Cir.1984).

The court in *Furtado* noted that a rule barring prejudgment interest in section 1983 cases "is arguably appropriate because section 1983 creates a species of tort liability, and prejudgment interest on the typical unliquidated tort claim was not recoverable at common law." *Id.* at 98. The court, however, declined to adopt an "inflexible rule" barring prejudgment interest in section 1983 cases since "the traditional common law view has been critized," and since "common law tort rules, although a useful starting point for fashioning remedies for section 1983 violations, are not binding." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 258–59, 98 S.Ct. 1042, 1049–50, 55 L.Ed.2d 252 (1978)).

The Court agrees that it is unnecessary to adopt a rule barring prejudgment interest in every section 1983 case. However, the Court does not agree that questions of prejudgment interest should be left to the jury simply because traditional common law views regarding awards of prejudgment interest have been critized. *Furtado*, 604 F.2d at 98. And while the Court recognizes that common law tort rules are not binding in section 1983 cases, *Carey*, 435 U.S. at 258–69, 98 S.Ct. at 1049–50, the

Court also notes that in appropriate cases, these rules are useful and equally applicable in fashioning remedies for violations of section 1983. *Id.*

The present case involves an unliquidated claim. That is, the amount of the claim cannot be ascertained by mere calculation or computation. The Court finds that there is simply no reason to apply a rule other than the common law tort rule disallowing prejudgment interest on unliquidated claims. *See First National Bank Co. v. Insurance Co.*, 606 F.2d 760, 769–70 (7th Cir.1979). Although *Furtado* suggested that awards of prejudgment interest would further the compensatory and deterrence policies underlying section 1983, the Court concludes that awards of compensatory and punitive damages already effectively further these policies. Defendants' motion to strike plaintiffs' request for prejudgment interest is therefore granted.

### *Claims by the Administrator*

In Count II, plaintiffs Alex and Marge Strandell seek recovery for deprivations of their constitutional rights as parents. Count II is also brought by Alex Strandell as the administrator of his son's estate. Defendants move to dismiss the administrator as a plaintiff in Count II on the basis that the administrator has no standing to sue under section 1983 for the alleged losses of Alex and Marge Strandell as parents. In *Guglielmoni v. Alexander*, 583 F.Supp. 821 (D.Conn.1984), the court held that the administrator of an estate cannot pursue a section 1983 claim for losses suffered by parents as a result of their son's suicide. *Id.* at 829. Thus, although parents as individuals have a right, under section 1983, to recover for the loss of society and companionship of their children, *Bell v. City of Milwaukee*, 746 F.2d 1205, 1243–45 (7th Cir.1984), the *administrator* has no standing to sue for deprivations of the parents' constitutional rights. Therefore, Alex Strandell as administrator is dismissed as a plaintiff from Count II.

### *Plaintiff's State Law Claims*

#### A. *Pendent Jurisdiction*

Defendants contend that the Court should decline to exercise its pendent jurisdiction over Counts III, IV and V, which involve claims under the Illinois Wrongful Death Act, the Illinois Survival Act and the Illinois Family Expense Act. Defendants argue that these claims will prolong discovery and confuse the jury.

The exercise of pendent jurisdiction is discretionary with the district court. *Smith v. No. 2 Galesburg Crown Corporation*, 615 F.2d 407, 422 (7th Cir.1980). "A federal court may, in its discretion, entertain state law claims when a plaintiff's complaint presents a substantial federal question and the federal and state claims 'derive from a common nucleus of operative fact.'" *Benson v. Cady*, 761 F.2d 335, 343 (7th Cir.1985) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 2 (1966). The factors that a district court should consider in determining whether to exercise pendent jurisdiction are "judicial economy, convenience, and fairness to the litigants." *Vickers v. Quern*, 578 F.2d 685, 689 (7th Cir.1978).

In the present case, plaintiffs have presented a substantial federal question based on 42 U.S.C. § 1983. It is clear that the federal and state claims derive from a "common nucleus of operative fact," and that judicial economy would be preserved by trying the federal and state claims in one proceeding. The Court will therefore retain jurisdiction of plaintiffs' state law claims.

#### B. *Defendant Jackson County*

Defendant Jackson County contends that it cannot be held liable under a theory of respondeat superior in Counts III and IV. Defendant cites *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) in support of its proposition. *Monell*, however, applies only to municipal liability in federal civil rights cases.

Counts III and IV involve state law claims, and under Illinois law, counties are liable, on a theory of respondeat superior, for injuries caused by the negligence of their employees. *Holda v. Kane County*, 88 Ill.App.3d 522, 43 Ill.Dec. 552, 559, 410 N.E.2d 552, 559 (Ill.App.Ct.1980). *See also Baltz v. County of Will*, 609 F.Supp. 992, 995 (N.D.Ill.1985); *Martin v. County of Kendall*, 561 F.Supp. 726, 730 n. 12 (N.D. Ill.1983). The motion to dismiss Jackson County as a defendant in Counts III and IV is therefore denied.

*Plaintiffs' Request for Injunctive Relief and Class Certification*

Defendants move to strike and/or dismiss plaintiffs' prayers for injunctive relief, as well as all references in the complaint to a class action. Since plaintiffs' requests for class certification and injunctive relief are closely related issues, the Court addresses these two questions together.

A. *Class Certification*

■■■ In their Motion for Class Certification, plaintiffs request the Court to designate this case as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. The proposed class consists of two subclasses: 1) all present and past pretrial detainees incarcerated in the Jackson County Jail, and 2) all individuals who will in the future be subjected (as pretrial detainees) to the practices and totality of conditions of the Jackson County Jail.

Under Rule 23(a), there are four prerequisites that must be satisfied before a class action will be allowed:

(1) [T]he class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition, the representative plaintiff must be a member of the class. *General Telephone Company v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight Systems, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977). *See also Davis v. Ball Memorial Hospital Association, Inc.*, 753 F.2d 1410, 1417 (7th Cir. 1985); *Ekanem v. Health and Hospital Corporation*, 724 F.2d 563, 572 (7th Cir. 1983).

In the present case, plaintiffs are not members of the proposed class that they seek to represent. They have not been, nor are they now, pretrial detainees confined in the Jackson County Jail. In light of the requirement that the named representatives must be a member of the class that they seek to represent, plaintiffs' Motion for Class Certification is denied. Defendants' Petition for an Evidentiary Hearing on the Motion for Class Certification is likewise denied.

B. *Injunctive Relief*

In their complaint, plaintiffs request the Court to enjoin Jackson County and its employees from 1) placing suicidal and emotionally disturbed detainees in jail cells that contain anchoring devices for committing suicide; and 2) utilizing an understaffed, overpopulated and antiquated jail facility. Defendants move to strike and/or dismiss the prayers for injunctive relief on the basis that plaintiffs do not have standing to seek injunctive relief, and on the further ground that plaintiffs have failed to show an immediate threat of harm from the conduct they seek to enjoin. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) involved the question of whether plaintiff, who was subjected to a "chokehold" by police officers, had standing to seek injunctive relief. In holding that plaintiff did not have standing, the Court stated, "The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct

injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 102, 103 S.Ct. at 1665 (citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccommpanied by any continuing, present adverse effects." *Id.* (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974)).

Plaintiffs in the present case are not pretrial detainees in the Jackson County Jail nor are there any facts alleged indicating that they will become detainees. Therefore, they are not likely to suffer future injury from the conduct that they seek to enjoin. Accordingly, the Court concludes that plaintiffs lack the requisite standing to seek injunctive relief.

The Court notes the case of *Lewis v. Tully*, 99 F.R.D. 632 (N.D.Ill.1983), in which another court held that *Lyons* does not apply to class action suits. *Lewis*, however, is not applicable to the present case in light of this Court's decision that class certification be denied. Furthermore, the Court is not convinced that *Lyons* is inapplicable to class action suits. *See Williams v. City of Chicago*, 609 F.Supp. 1017 (N.D. Ill.1985) (standing requirement as discussed in *Lyons* applies to both individual and class actions). Defendants' motion to dismiss plaintiffs' request for injunctive relief is therefore granted.

*Conclusion*

For the foregoing reasons, the Court hereby enters the following Order:

1. Defendants' motion to strike and/or dismiss the prayer for punitive damages in Counts III and IV is GRANTED;

2. Defendants' motion to strike and/or dismiss the prayer for pre-judgment interest is GRANTED;

3. Defendants' motion to dismiss Alex Strandell as administrator of the estate of Michael Strandell, in Count II, is GRANTED;

4. Defendants' motion to strike and/or dismiss plaintiffs' request for injunctive relief is GRANTED.

The remainder of defendants' motion to strike and/or dismiss is DENIED.

IT IS FURTHER ORDERED that 1) plaintiffs' motion for class certification be DENIED, and 2) defendants' petition for an evidentiary hearing on the motion for class certification be DENIED.

IT IS SO ORDERED.