712 F.2d 1140
 STATE BANK OF ST. CHARLES, as Administrator of the Estate of
Christopher A. Ward, Deceased, Plaintiff-Appellant,
v.
David CAMIC, Patrick Ahlgren, Donald Stimson, Dan Peterson,
and The City of Aurora, Defendants-Appellees.
 No. 82-2781.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 6, 1983.
Decided July 13, 1983.
 
 Wendal W. Clancy, Clancy, McGuirk & Hulce, P.C., St. Charles, Ill., for plaintiff-appellant.
 Craig S. Mielke, Reid, Ochsenschlager, Murphy & Hupp, Aurora, Ill., for defendants-appellees.
 Before PELL and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.*
 PELL, Circuit Judge.
 
 
 1
 The State Bank of St. Charles (Bank), suing on behalf of the estate of Christopher A. Ward (Ward), deceased, appeals from the district court's grant of summary judgment in favor of the City of Aurora, Illinois, and individually named Aurora police officers. The principal issue on appeal is whether questions of material fact exist relevant to the Bank's claims that the defendants violated Ward's constitutional rights by prohibiting him from making a phone call prior to their placing him into a cell and/or failing adequately to supervise Ward so as to prevent his committing suicide while he was incarcerated.
 
 I. FACTS
 A. The Parties
 
 2
 Ward, upon whose behalf the Bank sues, committed suicide while incarcerated in a cell at the City of Aurora, Illinois, police department on May 28, 1979. Defendants David Camic, Patrick Ahlgren, Donald Stimson, and Dan Peterson are police officers who were in the employ of the City of Aurora on the date of Ward's death. As developed below, Camic was the officer responsible for arresting Ward for driving with a suspended driver's license, following Ward's involvement in a minor traffic accident. Ahlgren was one of two officers who drove Ward from the scene of the accident to the police station and who attempted to gain from Ward the information required to complete the department's booking form. Stimson was a booking officer whose duties included conducting regular cell checks. Peterson was voluntarily dismissed from this action and is not involved in this appeal.
 
 B. Events of May 28, 1979
 
 3
 Ward was involved in a minor automobile accident at approximately 6:00 P.M. In response to a call for assistance from the first officer at the scene, Camic arrived at the site of the accident approximately fifteen minutes later. He arrested Ward for driving with a suspended license, a Class A misdemeanor requiring a $100.00 bond. Because Ward was obviously intoxicated, Camic called for a vehicle to transport Ward to the police station. Ahlgren, along with officer Turnbow, arrived in a squad car. Camic, Turnbow, and Ahlgren attempted to search Ward. Ward resisted their efforts both to search him and to put him into the squad car. According to Camic, Ward attempted to strike him. Camic, in return, struck Ward in the stomach.
 
 
 4
 Ward, together with Ahlgren and Turnbow, arrived at the booking room of the Aurora Police Department (APD) sometime between 6:30 P.M. and 6:45 P.M. The two officers sought information from Ward in order to complete the booking form. Although eventually twenty of the twenty-five boxes on the form were completed, Ward allegedly refused to cooperate with the booking formalities. Throughout the procedure, Ward repeatedly demanded the right to make a phone call. Turnbow informed him that he would be permitted a call when the booking formalities were completed.
 
 
 5
 Lieutenant Olin, an APD supervisor, arrived in the booking area while the officers were attempting to elicit information from Ward. He witnessed Ward's lack of cooperation. Olin was also apparently told by Ahlgren that the only information they could obtain from Ward was his name and address. Olin then told Ahlgren to lock Ward in a cell. Ward again became abusive and violent, kicking Ahlgren and generally resisting while the officers removed his property, including his belt and shoe laces, and took him to a cell out of sight of the booking area.
 
 
 6
 The three officers left the cell area at approximately 6:55 P.M. After leaving the cell area, Ahlgren marked on the booking sheet that Ward had "refused" to make a phone call. According to Ahlgren, this characterization reflected his view that Ward could have made a phone call had he cooperated with the officers in completing the booking form. A notation on the form was also made that Ward was behaving in a "freaky" manner.
 
 
 7
 Stimson had gone to dinner about 6:45 P.M. He did not then know of Ward's incarceration. Stimson returned about 7:40 P.M. After assisting another officer in fingerprinting a prisoner, Stimson began a routine cell check. At 7:47 P.M., Stimson discovered Ward dead in his cell. Ward had ripped his shirt into five pieces of cloth and made a rope with which he hanged himself. At the time Stimson discovered Ward, he had been dead of strangulation approximately thirty minutes.
 
 
 8
 C. Relevant Policies and Regulations of the APD
 
 
 9
 The APD requires that a person be afforded a reasonable number of phone calls before he is confined. These calls are to be made within a "reasonable" time which is defined as meaning within the first hour after arriving at the place of custody. The APD regulations also state that cells are to be checked every hour and that every person "should be considered as a potential suicide victim."
 
 D. Proceedings Below
 
 10
 The district court granted summary judgment to the defendants on the grounds that neither delaying Ward's phone call until he became more sober nor failing to prevent Ward's suicide constitutes a constitutional deprivation. The district judge stated: "Because the uncontested facts fail to establish any wrongdoing by the defendants beyond an isolated omission to supervise the prisoner, the claim involves simple negligence at best that does not rise to the level of a constitutional deprivation."
 
 II. MERITS
 
 11
 In Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court stated that:
 
 
 12
 [I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.
 
 
 13
 Id. at 535, 101 S.Ct. at 1913. Because it is conceded that the defendants were acting under color of state law, this court's task on review focuses on the second prong of the Parratt test. We must determine whether the district judge correctly determined that no genuine issue of material fact existed as to whether Ward suffered a constitutional deprivation at the hands of the APD.[1] The Bank alleges violations of Ward's Fifth, Sixth, Eighth, and Fourteenth Amendment rights. We address in turn whether: (1) Ward's Sixth Amendment right to counsel was abridged; (2) the arrest and confinement of Ward that culminated in his suicide deprived him of the Eighth Amendment right to be free from cruel and unusual punishment; and (3) Ward's Fifth and Fourteenth Amendment rights not to be deprived of liberty without due process of law were violated by the APD. Finally, we discuss whether a claim based on alleged violations of state tort law is cognizable in this action.
 
 
 14
 In determining whether genuine issues of material fact exist, only those inferences that follow reasonably from the evidence must be construed in favor of the party against whom the motion is made. E.g., Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt, 700 F.2d 341, 349 (7th Cir.1983).
 
 A. Right to Counsel
 
 15
 In Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the Supreme Court held that the right of an accused person to consult an attorney of his choosing attaches "when the process shifts from investigatory to accusatory--when its focus is on the accused and its purpose is to elicit a confession." Id. at 492, 84 S.Ct. at 1766. In Escobedo, the police had interrogated the defendant at length about the murder of which he was accused. In the course of the interrogation, Escobedo implicated himself in the crime. Escobedo had repeatedly asked to see his attorney and had been misinformed by the police that his lawyer didn't want to see him.
 
 
 16
 Escobedo does not support the Bank's claim that Ward's Sixth Amendment right to consult an attorney was violated in the present case. As the Supreme Court has subsequently noted, the prime purpose of Escobedo was to guarantee the " 'full effectuation of the privilege against self-incrimination' " rather than to "vindicate the constitutional right to counsel as such." Kirby v. Illinois, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (quoting Johnson v. New Jersey, 384 U.S. 719, 729, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966)). There is no contention whatsoever that the questions asked of Ward prior to his incarceration aimed to elicit a confession or otherwise cause him to incriminate himself. The questions pertained solely to the biographical data required for completion of the booking form.
 
 
 17
 Further, any argument that this routine line of questioning could be characterized as accusatory rather than investigatory, and therefore within the purview of the constitutional right to counsel, is precluded by Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). In Kirby, the Court rejected the argument that the petitioner should have been advised of his right to counsel prior to a pre-indictment "show-up." The Court held that the initiation of adversary judicial criminal proceedings--by way of formal charge, preliminary hearing, indictment, information or arraignment--is the point at which the Sixth Amendment right to counsel attaches. Id. at 689-90, 92 S.Ct. at 1882-83.
 
 
 18
 In this case, the alleged deprivation of counsel occurred before any adversary judicial proceedings were instituted. Under Kirby, Ward's right to counsel was not violated by postponing his right to a phone call until completion of the booking form bearing in mind his intoxicated condition. The period of time involved was not unreasonable.
 
 
 19
 The case on which the plaintiff principally relies, State v. Krozel, 24 Conn.Sup. 266, 190 A.2d 61 (1963), does not alter this conclusion. In Krozel, the defendant was interrogated, rather than merely asked routine biographical questions, before being allowed counsel. Under Escobedo, Krozel had a right to counsel before such questioning occurred. Further, Krozel was decided prior to the Supreme Court's clarification of Escobedo in Kirby.
 
 
 20
 Even if the APD regulations required that a person in custody be allowed a phone call before incarceration and within an hour after arrival at the police station, Ward had no Sixth Amendment right to a phone call absent any effort to interrogate him or any action by the APD subject to characterization as the initiation of adversary judicial proceedings.
 
 
 21
 The Bank relies on the notation on the booking form that Ward had "refused" a phone call to suggest that he would have been confined indefinitely, or interrogated, or subjected to adversarial proceedings, without being granted his phone call privileges. This is pure speculation and therefore raises no genuine issues of material fact that would preclude summary judgment, see Fed.R.Civ.P. 56(c). At the time Ward took his own life, no violation of his Sixth Amendment rights had occurred and the defendants were therefore properly granted summary judgment on this Section 1983 claim.[2]
 
 B. Eighth Amendment Rights
 
 22
 The theory behind the Bank's Eighth Amendment claim is that Ward had a right to be protected from committing suicide. Allegedly, the denial of a phone call that would have permitted him to communicate with supportive persons, combined with incarceration, drove him to a suicidal state. Because he was placed in a cell in which he could not be viewed by officers in the booking room, because Ward's cell was not immediately checked upon Stimson's return from dinner, and because the APD monitoring systems failed to alert the officers that Ward was harming himself, the suicide occurred.
 
 
 23
 In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that only "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." Id. at 104, 97 S.Ct. at 291 (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). The standard articulated in Estelle is analogous to that applied by this court in resolving whether an inmate who was beaten by a fellow prisoner had been deprived of his Eighth Amendment rights.[3]
 
 
 24
 In United States ex rel. Miller v. Twomey, 479 F.2d 701 (7th Cir.1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974), this court considered the Eighth Amendment claim raised by plaintiff Gutierrez pursuant to 42 U.S.C. § 1983.[4] Gutierrez had been beaten with a baseball bat by inmate Bright. Bright had both a history and reputation of violence. Nonetheless, prison officials had not segregated Bright from the other prisoners and had allegedly failed to supervise him adequately while he was in the Mechanical Store where the assault occurred. This court affirmed the dismissal of Gutierrez's complaint, stating that the prison officials had not acted with "such callous indifference ... that an official intent to inflict unwarranted harm may be inferred." Id. at 719-20.
 
 
 25
 Gutierrez suggests that the "deliberate indifference" standard of Estelle is met only if there were a strong likelihood, rather than a mere possibility, that violence would occur. As noted in Vun Cannon v. Breed, 391 F.Supp. 1371 (N.D.Cal.1975), "a guard does not have to believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur." Id. at 1374-75. In short, even though Section 1983 embodies no state of mind requirement, Parratt v. Taylor, 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), the Eighth Amendment does.
 
 
 26
 In the instant case, none of the allegations raises a question of material fact as to whether the defendants had knowledge of, or even any particular reason to suspect, suicidal tendencies on the part of Ward. Camic and Ahlgren knew that Ward was intoxicated, uncooperative, and had attempted to assault them. Knowing that he was behaving violently, or was acting in a "freaky" manner is not synonymous with having reason to know that the violence might become self-directed. Defendant Stimson can hardly be charged with any knowledge of violent tendencies on Ward's part because Stimson did not know Ward was incarcerated at the APD until he returned from dinner. By that time, Ward had already hanged himself. Further, in removing Ward's belt and shoelaces, the APD did take precaution against the possibility of suicide.
 
 
 27
 Even if the defendants disregarded one or more of their established procedures, such as checking the cells every hour or effectively monitoring by visual or auditory systems the activities of prisoners incarcerated at a distance from the main booking room, the actions of the defendants do not constitute deliberate disregard for the possibility that Ward would take his own life. See Christian v. Owens, 461 F.Supp. 72, 77 (W.D.Va.1978) (finding no Eighth Amendment deprivation even though jailor allegedly failed to search prisoner and prisoner subsequently committed suicide with weapon he had secreted in his boot). The defendants had no actual knowledge that Ward was a suicide risk, and certainly none that he was an unusually high suicide risk, and they did take reasonable precautions to guard against self-infliction of harm. If an Eighth Amendment right to be protected from suicide exists, it was not abrogated in this case because the defendants' lack of knowledge and their exercise of reasonable precautions precludes any possibility of their actions being characterized as deliberate or callous indifference.
 
 
 28
 Because no questions of fact material as to whether Ward's Eighth Amendment rights were violated exist, the district judge properly granted summary judgment for the defendants on the Bank's Section 1983 claim insofar as it relied on allegations of Eighth Amendment violations.
 
 C. Fifth and Fourteenth Amendment Rights
 
 29
 The Bank claims that Ward's Fifth and Fourteenth Amendment rights, including a right to personal emotional security and a right to communicate with family members, were violated. Although the Bank is less than specific in its briefs before this court as to which clauses of the amendments support these claims, only the broad language prohibiting deprivations of life or liberty without due process of law could possibly be the basis of the Bank's claim.
 
 
 30
 Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), is particularly relevant to analysis of these claims insofar as they are based purely on the broad language of the due process clause. In Parratt, an inmate sued state prison authorities, pursuant to 42 U.S.C. § 1983, for alleged negligence in losing hobby materials that he had ordered through the mail. Taylor relied solely on a violation of his Fourteenth Amendment right not to be deprived of property without due process of law. The Supreme Court, in a majority opinion authored by Justice Rehnquist, found both that Section 1983 embodied no state of mind requirement and that misplacing the hobby materials fell within the literal language of the Fourteenth Amendment. The Court held, however, that depriving one of his property is not a violation of the Fourteenth Amendment so long as the victim has recourse to "due process of law." The existence of a state tort remedy, despite the fact that it provided only the possibility of post-deprivation relief and that it precluded recovery against individual defendants, met the requirement of due process and Taylor's Section 1983 claim was therefore not cognizable.
 
 
 31
 The Bank's due process allegations in this case are arguably distinguishable from Parratt in that Parratt involved a loss of property rather than an alleged deprivation of life or liberty. In a concurring opinion, Justice Blackmun sought to limit the scope of Parratt to property deprivations, 451 U.S. at 527, 101 S.Ct. at 1908, and, in a separate concurring opinion, Justice White agreed with Justice Blackmun's reservations, id. We find little indication, however, that such a limitation was endorsed by a majority of the court.[5] Assuming, therefore, that Parratt is applicable to an alleged deprivation of life or liberty, as well as one of property, the Bank's suit is foreclosed because Illinois courts have stated that, in appropriate factual circumstances, its wrongful death statute may provide recovery for one who sues on behalf of the estate of a prisoner who committed suicide. See Dezort v. Village of Hinsdale, 35 Ill.App.3d 703, 342 N.E.2d 468 (1976).
 
 
 32
 Even if Parratt were interpreted to address only deprivation of property claims under the Fourteenth Amendment, there is considerable Supreme Court authority supporting our view that Ward suffered no deprivation of a due process nature. In his opinion concurring in the result in Parratt, Justice Powell reviewed at length the Supreme Court cases that have implied a due process deprivation requires intentional action on the part of the defendants. 451 U.S. at 548-50 & nn. 5-8, 101 S.Ct. at 1919-20 & nn. 5-8 (citing, inter alia, Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); United States v. Lovasco, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); Paul v. Davis, 424 U.S. 693, 698, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976)). Other cases have found a due process violation when the challenged conduct was so egregious that it "shocks the conscience." E.g., Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (evidence obtained by forcefully administering emetic), cited in Parratt, 451 U.S. at 553 n. 11, 101 S.Ct. at 1922 n. 11 (Powell, J., concurring in result). Finally, the Parratt decision reaffirms the concern previously expressed by the Court that Section 1983 should not be construed to create a " 'font of tort law to be superimposed upon whatever systems may already be administered by the States.' " 451 U.S. at 544, 101 S.Ct. at 1917 (quoting Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)); accord, Parratt, 451 U.S. at 544-45, 101 S.Ct. at 1917-1918 (Stewart, J., concurring); id. at 554 n. 13, 101 S.Ct. at 1922-1923 n. 13 (Powell, J., concurring in result).
 
 
 33
 The judge below found that those actions by the APD of which the Bank complains involve "simple negligence at best." Nothing the defendants did was intended to culminate in Ward's suicide and none of their actions could be described as shocking to the conscience. Even if the existence of a state tort remedy applicable to the Bank's grievance does not automatically preclude the existence of a constitutional deprivation in this case under Parratt, the allegations made by the Bank simply do not support the conclusion that Ward was deprived of any Fifth or Fourteenth Amendment due process rights. The district court therefore properly granted summary judgment for the defendants on the Bank's claims pursuant to 42 U.S.C. § 1983.
 
 D. Pendent State Claim
 
 34
 It is unclear from the record whether Count I of the Bank's complaint, alleging a failure to supervise Ward, was premised on 42 U.S.C. § 1983 or state tort law. The district judge construed the claim as pursuant to Section 1983 and did not address the implications of Illinois tort law.
 
 
 35
 We also have analyzed the allegations pursuant to Section 1983. If this count were intended as a pendent state claim, however, it was in any event subject to dismissal on summary judgment once the court below determined that the complaint failed to state any federal claim. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); see Davis v. Murphy, 559 F.2d 1098, 1102 (7th Cir.1977) (judicial economy dictates federal court should decide merits of pendent state claim if federal cause of action is stated in other count of complaint and evidence regarding pendent claim has been presented). In affirming the dismissal of this count as a pendent state claim, we express no opinion as to whether the Bank's allegations would be actionable under state law except, of course, for our observation that a duty to protect prisoners from suicide has, under appropriate factual circumstances, been recognized under Illinois law, see Dezort v. Village of Hinsdale, 35 Ill.App.3d 703, 342 N.E.2d 468 (1976).
 
 CONCLUSION
 
 36
 Having considered all the arguments urged by the parties to this appeal, we conclude that the district judge correctly found that no genuine issue of material fact precluded summary judgment in favor of the defendants on the Section 1983 claims raised by the Bank. If the Bank intended to plead a pendent claim regarding the alleged failure to supervise Ward during his brief incarceration, that claim was properly dismissed in this federal case. The summary judgment granted the defendants below is
 
 
 37
 AFFIRMED.
 
 
 
 *
 William J. Jameson, Senior District Judge of the District of Montana, sitting by designation
 
 
 [1]
 The Parratt Court determined that 42 U.S.C. § 1983 embodies no state of mind requirement. 451 U.S. at 534, 101 S.Ct. at 1912. Although Parratt was decided before the district court opinion in this case issued, the parties have devoted considerable attention in their briefs before this court to whether the conduct alleged was "negligent" or "reckless." In light of Parratt, as well as previous precedent in this court eschewing analysis grounded solely on such labels, see Spence v. Staras, 507 F.2d 554, 556 n. 1 (7th Cir.1974), we decline to follow such an approach in this case
 
 
 [2]
 The Bank argues that Escobedo and Kirby are distinguishable because they pertain to the right to have counsel present, not the right to place a phone call to counsel. We find no Sixth Amendment right to place a phone call, be it to an attorney or family members. Insofar as the Bank asserts that the denial of the phone call abridged Ward's right to personal emotional security, this claim is only cognizable, if at all, pursuant to the Due Process Clause. See Section II(C) of this opinion, infra
 The Bank also suggests that the booking form was substantially complete, and therefore Ward should have been allowed a phone call. Even if most of the information had been obtained, there is no constitutional requirement that a phone call be permitted upon completion of booking formalities.
 
 
 [3]
 Neither the Supreme Court nor this court has expressly held that there is a constitutional right to be protected from suicide. Because we need not reach that ultimate question in this case, we rely on those cases dealing with harm inflicted on one inmate by a fellow prisoner
 
 
 [4]
 Gutierrez v. Department of Public Safety was one of six civil rights actions against prison officials that was consolidated for decision. All six cases are reported as United States ex rel. Miller v. Twomey, 479 F.2d 701 (7th Cir.1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974). We hereafter refer to the relevant portion of this opinion as "Gutierrez " in order to distinguish it from the other five cases involved in the appeal
 
 
 [5]
 We refer only to alleged deprivations of the right to due process. This court has previously held that the existence of a state remedy does not foreclose a Section 1983 action alleging deprivation of a substantive constitutional guarantee. Wolf-Lillie v. Sonquist, 699 F.2d 864, 872 (7th Cir.1983) (district court's conclusion that plaintiff's substantive Fourth Amendment rights were violated must not be disturbed on basis of Parratt )