793 F.2d 1291
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WALTER COSTILOW, ADMINISTRATOR OF THE ESTATE OF THOMAS K.
COSTILOW, DECEASED, Plaintiff-Appellant,
v.
CITY OF EASTLAKE; WILLIAM J. DePLEDGE, POLICE CHIEF; WILSON
R. KELLEY, POLICE SERGEANT; ROBERT JAKSA,
PATROLMAN; KENNETH ROBERTS, PATROLMAN,
Defendants-Appellees.
 85-3225
 United States Court of Appeals, Sixth Circuit.
 5/30/86
 
 AFFIRMED
 N.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: ENGEL, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff's decedent, Thomas J. Costilow, hanged himself in the defendant City of Eastlake's jail. Plaintiff brought an action alleging that defendants, City of Eastlake, Chief of Police William DePledge, and various police officers, violated decedent's constitutional rights under 42 U.S.C. Sec. 1983, and that, under Ohio law, defendants' negligence resulted in decedent's wrongful death. Plaintiff appeals from the district court's entry of a directed verdict in favor of defendants under section 1983 and from the jury's verdict in favor of defendants under Ohio law. For the reasons that follow, we affirm.
 
 I.
 
 2
 On March 19, 1983, plaintiff's decedent was involved in a two-car accident in Eastlake, Ohio. He was arrested, charged with driving while intoxicated, and taken to the Eastlake Police Department for processing. Plaintiff's decedent was placed in a cell which was under surveillance by closed-circuit television.
 
 
 3
 Police Sergeant Kelley spoke with Costilow's father at the station about 5:00 or 5:30 p.m. following the son's arrest. Although the father knew that decedent had attempted suicide in the past, he did not relate this information to Sergeant Kelley. A little after 7:00 p.m. that evening, decedent's father called Sergeant Kelley and informed him of his son's prior suicide attempt. Sergeant Kelley then notified the dispatcher to keep a close watch on decedent. At approximately the same time, however, two Eastlake police officers discovered decedent slumped down against the cell bars with his shirt around his neck.
 
 
 4
 Sergeant Kelley, unable to untie the knot, lifted decedent up while another police officer attempted to cut decedent down with a fingernail knife. Six or seven minutes later, paramedics arrived and cut decedent down. Revival attempts were unsuccessful, and decedent was pronounced dead on arrival at a nearby hospital.
 
 
 5
 In his complaint, plaintiff alleged that defendants subjected decedent to cruel and unusual punishment and deprived him of liberty without due process of law. According to plaintiff, defendant police officers, acting pursuant to the policies of the City of Eastlake and Chief of Police DePledge, negligently left decedent unattended in a cell and failed to adequately supervise or monitor him. Plaintiff further alleged that defendant police officers were incompetent when hired and inadequately trained. Defendants' conduct, plaintiff averred, amounted to 'willful and/or wanton misconduct.'
 
 
 6
 Plaintiff also alleged that, under Ohio law, defendants' negligent conduct resulted in decedent's wrongful death. According to plaintiff, defendant police officers negligently failed to monitor decedent, and defendant City of Eastlake knowingly operated an inadequate jail in violation of numerous state regulations. Plaintiff further alleged that defendant police officers were inadequately trained due to the deficient training program implemented by defendant City of Eastlake.
 
 
 7
 The case proceeded to trial, and plaintiff introduced the testimony of sixteen witnesses. Of the testimony introduced, the record before us contains only the deposition of Sergeant Kelley and the cross-examination testimony of Chief of Police DePledge. Sergeant Kelley testified that he did not send anyone to make periodic checks of the prisoners and that no log books were kept. However, Sergeant Kelley did testify that the cell containing decedent was under twenty-four hour-a-day surveillance through the use of a television monitoring system.
 
 
 8
 Chief of Police DePledge testified that on August 19, 1982, he received a letter from Melda Tucker, Regional Jail Inspector for the state of Ohio, informing him that the Eastlake facility did not comply with Ohio minimum jail standards. She stated that she did not approve of fixed camera surveillance and recommended one-hour walk-throughs. She recommended fifteen or twenty checks for potential suicides and that a log of these checks be kept. She further recommended a screening process for new prisoners and that the facility employ full-time jail personnel. DePledge admitted that, as of March 19, 1983, these recommendations had not been complied with.
 
 
 9
 Following presentation of plaintiff's evidence, the district court granted defendants' motion to dismiss the section 1983 action. The district court determined that plaintiff had failed to show that defendants' conduct amounted to reckless conduct or deliberate indifference. The district court noted that Eastlake's practice of surveillance was the equivalent of hourly walk-throughs and that the practice provided more supervision than was required by the Ohio minimum jail standards.
 
 
 10
 The state law negligence claim proceeded to the jury. During the jury's deliberations, the district court, in response to a written inquiry by the jury, instructed the jury that Ohio Rev. Code Sec. 5120.10 is a statute contained in the Ohio Revised Code, but that the minimum jail standards promulgated pursuant to the statute are not part of the Ohio Revised Code. The district court noted the objections of the parties to the instruction. The jury returned a verdict for defendants.
 
 II.
 
 11
 First, plaintiff argues that the district court erred by granting a directed verdict in favor of defendants under section 1983. Generally, a motion for directed verdict should be granted only where there is a 'complete absence of proof on the issues or no controverted issues of fact upon which reasonable men could differ.' Milstead v. International Brotherhood of Teamsters, Local No. 957, 580 F.2d 232, 235 (6th Cir. 1978). In passing on the motion, the trial court must view the evidence in the light most favorable to the party opposing it, giving the party the benefit of all reasonable inferences in its favor. Id. The standard of review at the appellate level is the same. Id.
 
 
 12
 Plaintiff alleged that defendants' conduct subjected decedent to cruel and unusual punishment in violation of the Eighth Amendment. Although pretrial detainees are not within the protection of the Eighth Amendment, 'the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial.' Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985); State Bank v. Camic, 712 F.2d 1140, 1145 (7th Cir.), cert. denied, 464 U.S. 995 (1983). Under the Eighth Amendment, mere negligence is not sufficient to sustain a violation. Rather, state officials must act with reckless disregard or callous indifference to the dangers faced by a prisoner. Roberts, 773 F.2d at 723; Camic, 712 F.2d at 1145.
 
 
 13
 Assuming that defendants failed to comply with Ohio minimum jail standards, the record before us does not indicate that defendants were deliberately or callously indifferent to the possibility that decedent would take his own life. See Camic, 712 F.2d at 1146. See also Estate of Davis v. Johnson, 745 F.2d 1066, 1071 n.1 (7th Cir. 1984). The record contains no evidence to suggest that defendants knew decedent was a suicide risk. Furthermore, defendants guarded against the risk of suicide by visually monitoring the activities of prisoners in each cell. See Camic, 712 F.2d at 1146.
 
 
 14
 Plaintiff also alleged that defendants' conduct deprived decedent of life without due process of law. In Daniels v. Williams, 106 S. Ct. 662, 667 (1986), the Court held that negligent acts by state officials, though causing injury to life, liberty or property, are not actionable under the due process clause. The Court declined to decide whether something less than intentional conduct, such as recklessness or gross negligence, is enough to trigger due process protections. 106 S. Ct. at 667 n.3. Since the evidence of record indicates that defendants' conduct in this case was at most negligent, the district court properly directed a verdict for defendants. See Camic, 712 F.2d at 1147.
 
 
 15
 Second, plaintiff argues that the district court erred by instructing the jury during deliberations that minimum jail standards promulgated pursuant to Ohio Rev. Code Sec. 5120.10 are not part of the Ohio Revised Code and by failing to instruct the jury that jail facilities must comply with the minimum standards. 'The function of a reviewing court with respect to [jury] instructions is to satisfy itself that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law.' 9 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2558 (1971). See also Service Merchandise Co. v. Boyd Corp., 722 F.2d 945, 950 (1st Cir. 1983). In determining whether the instructions are misleading, they must be considered 'not in isolation, in a piecemeal fashion, but in the context of the entirety of the judge's instructions in the trial taken as a whole.' United States v. Bloom, 538 F.2d 704, 710 (5th Cir. 1976), cert. denied, 429 U.S. 1074 (1977). See also Farace v. Independent Fire Insurance Co., 699 F.2d 204, 207 (5th Cir. 1983); Carruba v. Transit Casualty Co., 443 F.2d 260, 264 (6th Cir. 1971); Nolan v. Greene, 383 F.2d 814, 816 (6th Cir. 1967).
 
 
 16
 Where errors in the jury instructions are assigned, it is the responsibility of the appellant to furnish the court with a transcript containing the jury instructions given. See Fed. R. App. P. 10(b); Sanabria v. International Longshoreman's Association Local 1575, 597 F.2d 312, 313 (1st Cir. 1979). The transcript ordered by plaintiff does not contain the instructions given to the jury prior to deliberations, and it cannot be determined whether the instructions, taken as a whole, were misleading. Thus, plaintiff has failed to carry his burden of establishing the error assigned. See Bonner v. Coughlin, 657 F.2d 931, 939 (7th Cir. 1981) (per curiam); Brattrud v. Town of Exline, 628 F.2d 1098, 1099 (8th Cir. 1980) (per curiam).
 
 
 17
 Finally, plaintiff argues that the jury's verdict is not supported by substantial evidence. When an appellant attacks the sufficiency of the evidence supporting a jury verdict, he or she must provide the reviewing court a transcript of all relevant evidence. See Fed. R. App. P. 10(b); Bonner, 657 F.2d at 939; Hayes v. Consolidated Service Corp., 517 F.2d 564, 566 (1st Cir. 1975). In this case the transcript furnished by plaintiff contains only the deposition of Sergeant Kelley and the cross-examination testimony of Chief of Police DePledge. On the limited record before us, we cannot conclude that the jury's verdict is not supported by substantial evidence.
 
 III.
 
 18
 The judgment of the district court is AFFIRMED.