881 F.2d 1075
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Denise Louise CARTER, Plaintiff-Appellant,
v.
CITY OF LORAIN, et al., Defendants-Appellees.
 No. 88-3933.
 United States Court of Appeals, Sixth Circuit.
 Aug. 8, 1989.
 
 Before MERRITT and DAVID A. NELSON, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This case is brought by the court-appointed guardian of a man who suffered permanent brain damage after attempting to hang himself while detained at a police station. The complaint asserted, among other state and federal claims, a Sec. 1983 civil rights claim against the individual officers on duty that night at the station, those officers' superiors, and other city officials. The district court concluded that the individual defendants were not entitled to qualified immunity from suit. We disagree, and we shall reverse the order of the district court.
 
 
 2
 * Charles William Counts was arrested by a policeman in Lorain, Ohio, the evening of July 31, 1985, for driving under the influence of alcohol. His blood alcohol level was measured at .20 percent, twice the legal limit in Ohio. Mr. Counts was taken in a police car to the Lorain police station.
 
 
 3
 The individual police officers named as defendants in this case were well acquainted with Mr. Counts, who had a long local arrest record and had been arrested and booked at the station three times in the preceding seven months. Mr. Counts had not tried to injure himself or others on those occasions. Officers on duty the night of the suicide attempt characterized Mr. Counts' behavior that night as consistent with his behavior on previous occasions.
 
 
 4
 Police records and the deposition testimony and affidavits of those who were present establish the procedures followed at the station that night in considerable detail. The booking officer recorded his "Visual Opinion" of the detainee, asked a number of questions, and completed a medical screening form. Mr. Counts told the officer that he was a paranoid schizophrenic under a psychiatrist's care. Mr. Counts said that he was carrying no medication on his person, but was taking drugs prescribed by his psychiatrist. Mr. Counts' belt was taken as a routine precaution against suicide.
 
 
 5
 After the booking procedures were completed, Mr. Counts attempted to make a phone call but could not reach anyone; he was then taken to a nearby holding cell as a temporary measure until he could complete his phone call, at which point he was to have been moved to a regular cell. The holding cell is about fifteen feet from the booking desk, close enough so that an officer at the desk can see most (though not all) of the interior of the cell by taking a few steps. It is easy for the occupant of the cell to converse with officers at or near the desk, and Mr. Counts did in fact talk to officers in that area while being held in the cell.
 
 
 6
 A shift change occurred while Mr. Counts was being kept in the holding cell, and the new officer at the front desk was busy booking another detainee for almost half an hour. After the booking of the other detainee was completed and as that detainee was being led to a cell, the officer saw Mr. Counts hanging from one of the bars of his cell by his shirt and undershirt. The officer called for help, and Mr. Counts was immediately cut down and given CPR. Mr. Counts was rushed to a hospital and has remained "a near vegetable, a nonfunctional person" since that time because of "a permanent neurological and brain injury and impairment" caused by Mr. Counts' attempt to hang himself.
 
 
 7
 The City of Lorain had an established policy for preventing such suicides. The booking officer, after asking a detainee a battery of questions and completing certain forms, was supposed to make an initial determination as to whether the detainee posed a suicide risk. If the booking officer determined that such a risk existed, he was required to inform the officer in charge at the station. The officer in charge was then supposed to consider a variety of steps, including continuous visual observation of the detainee, holding the detainee in a padded cell, and transfer of the detainee to a hospital. The police chief stated that it was police policy to remove "all objects and articles of clothing which might be used to cause harm" to a detainee. These steps were not taken in the present case because the booking officer did not regard Mr. Counts as a suicide risk. The officer in charge was thus never brought into the decision-making process.
 
 
 8
 Mr. Counts' court-appointed guardian instituted this action in an Ohio state court. The complaint asserted a Sec. 1983 claim against individual officers, a Sec. 1983 claim against the city, and common law negligence claims against both the city and individual officers. The individual defendants included the city's mayor (Alex Olejko), its safety director (Richard Yepko), its police chief (John Malinovsky), two corrections officers of the Lorain city jail (J.M. Sanchez and Ansel Wright), and one patrolman (M. Minnich). The defendants promptly removed the action to federal court and moved for summary judgment, arguing that the individual defendants enjoyed qualified immunity from suit and that all of the defendants were entitled to judgment as a matter of law on all of the claims. The district court denied the summary judgment motion on both grounds. The individual defendants have appealed from the denial of the qualified immunity defense.
 
 II
 
 9
 The various police officers and city officials named as defendants in the complaint enjoy qualified immunity from suit under 42 U.S.C. Sec. 1983 unless their actions violated some constitutional right of Counts that was clearly established at the time the defendants acted. See Harlow v. Fitzgerald, 457 U.S. 800 (1982). Thus the plaintiff must show that as of July 31, 1985, the individual defendants owed Counts some clearly established duty of constitutional origin.
 
 
 10
 We recently addressed a virtually identical issue in another jail suicide case, Danese v. Asman, 875 F.2d 1239, 1244 (6th Cir.1989):
 
 
 11
 "The 'right' that is truly at issue here is the right of a detainee to be screened correctly for suicidal tendencies and the right to have steps taken that would have prevented suicide. The general right to medical care, for example, is not sufficient to require a police officer to have known that he had to determine that [the detainee] was seriously contemplating suicide and stop him from following through....
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 We conclude, then, that the district court erred in holding that qualified immunity did not apply as to the officers. The court below did not cite any cases showing that the officers had the constitutional duty to determine if [the detainee] was seriously inclined to commit suicide and then stop him. The story might be different if the police were certain that [the detainee] would attempt suicide and just ignored it, or if [the detainee] had told them he needed psychological help. If a prisoner asks for and needs medical care, it must be supplied. However, in this case, the officers could have reasonably thought that they were acting legally when they treated [the detainee] as they would any prisoner. Without precedent establishing an unambiguous right to have the police diagnose one's condition as prone to suicide, these officers cannot be held liable for not taking extraordinary measures to restrain [the detainee]."
 
 
 15
 875 F.2d at 1244. Danese is consistent with cases from the other circuits. See Freedman v. City of Allentown, 853 F.2d 1111, 1114-16 (3d Cir.1988); Gagne v. City of Galveston, 805 F.2d 558 (5th Cir.1986), cert. denied, 483 U.S. 1021 (1987); cf. State Bank of St. Charles v. Camic, 712 F.2d 1140, 1145 n. 3 (7th Cir.1983), cert. denied, 464 U.S. 995 (1983).
 
 
 16
 Although Danese's suicide occurred in 1982, three years before the attempted suicide at issue here, we are aware of no cases from this court or the Supreme Court decided between 1982 and 1985 that could be said to have "clearly established" by 1985 a constitutional right that was not "clearly established" in 1982. The district court's reliance on Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir.1985), as authority clearly establishing the asserted constitutional rights and duties, is misplaced; Roberts was decided on September 30, 1985, nearly two months after Mr. Counts' suicide attempt.
 
 
 17
 Nor are we able to agree with the district court that earlier cases dealing with prisoners' medical needs clearly established a constitutional right to have affirmative steps taken to prevent suicide. It is true that prison officials may not treat prisoners' serious medical needs with "deliberate indifference." Estelle v. Gamble, 429 U.S. 97, 104 (1976). It is also true that "pretrial detainees ... retain at least those constitutional rights ... enjoyed by convicted prisoners." Bell v. Wolfish, 441 U.S. 520, 545 (1979). But we are not convinced that these cases "clearly established" the specific rights asserted here. Moreover, even if we shared the plaintiff's belief that the "deliberate indifference" standard required affirmative steps to prevent jail suicides, and that this standard was "clearly established" at the time of Mr. Counts' suicide attempt, we would be unable to agree that the individual defendants' conduct in this case exhibited deliberate indifference either to the risk that Mr. Counts would try to kill himself or the problem of suicide attempts by pretrial detainees in general. The undisputed facts make out, at most, a negligence case.
 
 
 18
 We express no opinion, of course, on the Sec. 1983 claim against the City of Lorain or the state law negligence claims. We do wish to call the district court's attention to the Supreme Court's recent decision in City of Canton v. Harris, --- U.S. ----, 109 S.Ct. 1197 (1989), a decision addressing "what degree of fault must be evidenced by [a] municipality's inaction before [Sec. 1983] liability will be permitted." 109 S.Ct. at 1204 (emphasis deleted).
 
 
 19
 We REVERSE that part of the district court order that denied the individual defendants' immunity defense to the Sec. 1983 claims asserted against them, and REMAND this case with instructions to dismiss the Sec. 1983 claims against the individual defendants.