# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 04-2403 & 04-2278

PAULETTE WAITE,

*Plaintiff-Appellee, Cross-Appellant*,

*v.*

BOARD OF TRUSTEES OF ILLINOIS
COMMUNITY COLLEGE DISTRICT NO. 508,
also known as City Colleges of Chicago,

*Defendant-Appellant, Cross-Appellee.*

———————

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 6536—**Robert W. Gettleman**, *Judge.*

———————

ARGUED JANUARY 10, 2005—DECIDED MAY 12, 2005

———————

Before CUDAHY, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Paulette Waite, a 54-year-old
Jamaican woman, was suspended from her job. Among
other contentions, Waite claimed that she was suspended
because of her national origin, and a jury agreed. Her em-
ployer now argues that there was not sufficient evidence of
discrimination and that Waite was actually suspended be-
cause of her failure to complete an important project before

leaving on a vacation. For the reasons set forth in this opinion, we find that the jury's verdict was supported by the evidence.

## I.  History

Paulette Waite filed a complaint in the Northern District of Illinois alleging that she was suspended for 30 days by her employer, the Board of Trustees of the Illinois Community College District No. 508 ("City Colleges"), because of her national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and because of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623. She later amended her complaint and claimed that she was terminated because of her age and national origin, or in retaliation for filing a discrimination claim with the Equal Employment Opportunity Commission ("EEOC"). The district court granted summary judgment in favor of City Colleges on all claims arising from the discharge. The claims arising from the suspension, however, went to trial. The jury returned a verdict in favor of Waite on her national origin claim and awarded her $15,000 in damages. The jury found in favor of City Colleges on the age discrimination claim. Judgment was entered on the jury's verdict. City Colleges filed a renewed motion for judgment as a matter of law or a new trial after the verdict. The district court denied the motion.

Waite appealed the district court's determination that City Colleges was entitled to summary judgment on the claims relating to her termination. City Colleges filed a cross-appeal, arguing that the district court should have granted the motion for judgment as a matter of law and that there was not sufficient evidence for the jury verdict in Waite's favor.

A. *Employment Record*

Waite began working part-time for City Colleges in 1995. She was the coordinator of six Child Development Centers ("Centers") run by City Colleges. One of her responsibilities in this position was to secure funding for the Centers; for example, she worked with the Illinois Department of Human Services ("IDHS") and obtained grants that provided funding so that the Centers could assist low-income students and children. Waite became a full-time employee in 1997, but the responsibilities of her job remained essentially the same.

In May 2001, Waite received a contract renewal package from the IDHS relating to a Site Administered Child Care Contract for fiscal year 2002. The renewal package was due by June 18, 2001. When Waite realized that she could not meet this deadline because she could not get approval from the Board of Trustees in time, she asked the IDHS for an extension. She was told to send the information as soon as possible. Waite then told her supervisor, Cynthia Armster, Vice Chancellor of Student Affairs, about the extension.

When Waite began the process of preparing the application, she had trouble getting the various Centers to respond to her requests for information. Her grant proposal prospectus was not submitted to the Board of Trustees until the August meeting, where it was approved. There is some dispute between the parties as to how often Waite informed Armster of the progress she was making on the renewal package during these months.

Waite had scheduled a vacation to Jamaica that was to take place between August 13 and August 30. She left for this vacation without finishing the grant application. After she arrived in Jamaica, she finished the documents that were required for the application. She then faxed the documents and instructions on how to complete them to her husband and asked him to deliver the documents to the

office. The documents needed to be typed and proofread. On August 17, Antoinette Leavy, an administrative assistant, typed the forms and submitted the documents to Len Etlinger, District Director of Grants and Contracts.

A few days later, on August 20, Sharon Killebrew called from the IDHS to ask Armster whether City Colleges planned to submit its contract renewal package. Armster claims that Killebrew told her that the package deadline had been extended only to mid-July, and that City Colleges risked losing funding if they did not submit the package soon. Waite argues that there was no firm deadline, and that there would have been no ramifications if the package had not been submitted immediately. Regardless, Armster asked Etlinger to send the package to the IDHS right away. Etlinger found, however, that Leavy had made some mistakes, and so the two of them had to make corrections before the documents could be sent. The IDHS received the package on August 22, and City Colleges did not lose any funding.

## B.  Disciplinary Action

When Waite returned to work after her vacation on August 31, Armster presented her with a letter explaining that a pre-disciplinary hearing had been scheduled for September 7. The meeting's stated purpose was to determine whether Waite should be disciplined "up to and including termination." The letter explained that "[t]he Pre-Disciplinary meeting concerns charges that [she] failed to perform [her] duties with the renewal of the annual IDHS contract by missing the contract renewal deadline of June 18, 2001. As a result of [her] actions, the City Colleges of Chicago was [sic] positioned to lose over **$500,000** in grant funding." (Trial Tr. at 50-52) (emphasis in original).

The hearing took place as scheduled, and Ramona Shaw, Associate Vice Chancellor of Human Resources and Staff Development, served as the hearing officer. Shaw heard tes-

timony from both Waite and Armster regarding the circumstances surrounding the IDHS contract. Waite claims that Armster lied when she said that she believed City Colleges would lose the grant because of Waite's failure to submit it on time. At the conclusion of testimony, Shaw stated that she would write a report and submit it to the Chancellor. The report that she submitted in September recommended that Waite be suspended without pay for 30 days because Shaw found that the charges against Waite had been sustained. The Chancellor agreed, and Waite served her suspension October 5 through November 3.

After she returned to work, Waite filed a union grievance regarding her suspension, and on November 29, she filed a charge of discrimination with the EEOC. The basis for Waite's national origin discrimination claim arose at a meeting about a month before Armster began the suspension proceedings. This meeting was attended by two other department employees who voiced complaints about Waite. Armster, an African-American, then commented that she thought Waite displayed a "plantation mentality." Waite testified that this remark was a reference to her national origin "because usually it was said that Jamaicans in particular and Caribbean folks in general thought they were white and treated African-Americans like slaves." (Trial Tr. at 62).

Various other disagreements between Armster and Waite occurred during the next few months. On January 25, 2002, Armster recommended that Waite be fired. The reasons stated in the pre-disciplinary hearing letter were that Waite had been insubordinate and had failed to complete several specific tasks. Waite argued that these tasks were not her responsibility, and that she did actually complete some of the tasks. Nevertheless, she was terminated.

The next year, Tanya Woods was responsible for submitting the IDHS contract renewal forms. Woods is African-American and was 35 years old at the time of the trial. For

most of the time that Woods worked on the grant application, she was a part-time employee. The fiscal year 2003 application materials did not contain a specific due date. Woods was unfamiliar with the application process and asked for assistance from the IDHS on several occasions. She was not able to submit the application until October 9, 2002. However, Woods was not disciplined for this arguably late submission.

## II.  Analysis

### A.  Claims Relating to the Suspension

City Colleges argues that the district court erred in denying its motion for judgment as a matter of law on the suspension claims. *See* Fed. R. Civ. P. 50. We review the district court's decision *de novo* and examine all of the evidence in the record to determine whether the evidence presented was sufficient to support the jury's verdict of national origin discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002). "In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. In sum, we "will overturn a jury verdict for the plaintiff only if we conclude that no rational jury could have found for the plaintiff. . . ." *Millbrook*, 280 F.3d at 1173 (quotation omitted). This is obviously a difficult standard to meet.

In a sufficiency of the evidence challenge to a Title VII discrimination action, we must give deference to the jury verdict. "[O]nce a trial is complete and judgment rendered, the burden-shifting framework of *McDonnell Douglas* falls away: Post-trial we consider only whether the record supports the resolution of the ultimate question of intentional discrimination." *Id.* at 1174 (citation and quotation omitted). The question we must answer, then, is not whether the rea-

sons given for Waite's suspension were pretextual, but whether there was sufficient evidence to support the jury's findings that Waite was discriminated against because she is Jamaican. In order to determine whether sufficient evidence was presented, a number of factors should be considered; these factors include "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49.

We will first consider the strength of the prima facie case for discrimination. Waite demonstrated that: (1) she was a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside of her class more favorably. *See Foster v. Arthur Anderson, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999).

Waite provided evidence that Tanya Woods, who was not Jamaican, worked on the IDHS contract renewal package for fiscal year 2003. Woods submitted the package so late that funding was actually delayed, and yet she was not disciplined. Armster testified that she did not discipline Woods because she was not as familiar with the renewal process as Waite had been, and she was a part-time employee when she began working on the contract. Armster also claimed that Woods was in constant contact with the IDHS while she was working her way through the application. Waite responded that these reasons were not believable because Woods had the prior contracts to use as examples, and the information for the 2002 and 2003 contracts was surprisingly similar; therefore, the delay could not be blamed on inexperience. Also, Waite provided documents showing that Woods did not communicate with the IDHS until after the renewal package was submitted in October 2002.

Because evidence was presented which tended to show that Armster's reasons for treating Woods differently than Waite were questionable, the jury was entitled to reject Armster's testimony. In fact, the district court found that it was reasonable for the jury to disbelieve Armster's testimony because she was "less than candid," "failed to explain her actions satisfactorily," and was not a "particularly good witness." (April 21, 2004 Tr. at 4).

These credibility problems were also directly relevant to the question of whether the jury was permitted to find that Armster's reasons for suspending Waite were pretextual. Armster claimed that she recommended that Waite be disciplined because she "thought it was outrageous that [Waite] would leave for vacation, this contract had not been done, there was half a million dollars at stake, and that she would send this document with vague instructions to our office by way of her husband instructing [Armster] to complete this or make sure that it is completed." (Trial Tr. at 126). Waite provided evidence at trial that Armster did not truly fear losing funding from the IDHS. Armster admitted her belief that if the IDHS received the application soon, there would be no loss of funding. (Trial Tr. at 110). An IDHS representative testified that she did not make any statements to Armster that should have led Armster to believe that City Colleges would lose the funding based on the late submission. (Trial Tr. at 145-46). Another representative testified that she only knew of one situation in which the IDHS had rescinded a contract, and in that case the entire fiscal year had almost passed and the renewal package had still not been submitted. (Trial Tr. at 178-79).

City Colleges points out that it is not enough for the jury to disbelieve the explanation of the employer; "the factfinder must believe the plaintiff's explanation of intentional discrimination." *Millbrook*, 280 F.3d at 1174 (quoting *Reeves*, 530 U.S. at 148). It is true that the "plantation mentality" statement is the only evidence in the record that points to

discriminatory intent; but, in this case, it is sufficient. Waite provided an explanation of what she believed this statement meant. Armster did nothing to refute Waite's analysis, although she could have done so during her district court testimony. Armster did, however, testify that one of the reasons she recommended that Waite be disciplined was because she was outraged that Waite would ask her to finalize the contract. Based on this evidence, the jury could have reasonably concluded that Armster disciplined Waite because Waite, a Jamaican, left work for Armster, an African-American, to complete; Armster felt like Waite was treating her like a slave and displaying the "plantation mentality" she had accused Waite of exhibiting approximately one month before. The jury was permitted to infer that this "plantation mentality" remark was evidence of discriminatory animus.

City Colleges next argues that Armster's statement is not evidence of discriminatory intent because Armster was not a decision-maker in Waite's suspension; Armster initiated the disciplinary hearing, but Shaw made the decision to suspend Waite. Shaw conducted a hearing in which there was no mention of Waite's national origin, and Shaw testified that she did not consider Waite's national origin when deciding whether Waite should be suspended. But, even if Armster did not mention Waite's national origin to Shaw, Armster's feelings about Jamaicans could have tainted her assessment of Waite's job performance. *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1459 (7th Cir. 1994). Thus, even though there is no evidence that Shaw herself had a discriminatory intent, Waite was able to show that Armster, "an employee with discriminatory animus[,] provided factual information or other input that may have affected the adverse employment action." *Id.* (collecting sources). We find that the "plantation mentality" remark is, therefore, important evidence that was properly considered by the jury.

The jury in this case considered all of the evidence and determined that Waite was suspended because of illegal discrimination based on her national origin. While this is not the strongest case we have seen, we find that sufficient evidence does support the jury's verdict. The "plantation mentality" remark, the meaning of which was not explained by Armster, allowed the jury to conclude that Waite was suspended because she is Jamaican.

## B.  Claims Relating to the Termination

The district court granted summary judgment in favor of City Colleges on Waite's claims that she was terminated from her job because of national origin discrimination, age discrimination, or in retaliation for filing a discrimination claim with the EEOC. We review a district court's decision to grant summary judgment *de novo. See McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). We will consider evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986). Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The district court determined that Waite was terminated because she was insubordinate; she declined Armster's request to help with an "in-kind" report, and she failed to conduct food reviews to train her subordinates in spite of being asked to do so by Armster. It is questionable whether Waite was able to prove her prima facie case as to her ter-

mination claims, but even assuming that she has established a prima facie case of discrimination, we agree with the district court's determination that she failed to prove that a genuine factual issue exists on the question of pretext.

City Colleges argues that it fired Waite because she was unresponsive and insubordinate to her supervisor, and because she failed to perform her job in a responsible manner. It supports the claim with descriptions of two particular situations: the preparation of the in-kind report and the scheduling of the food reviews.

Armster asked Waite to supervise and assist clerical staff members who had been assigned to complete an in-kind report which was necessary for a grant application. The night before it was due, Armster requested that Waite make corrections to the report. Waite responded that she would be unable to work on the project that evening. The report was submitted late, and City Colleges was placed in violation of the grant agreement. Waite claimed that she was not responsible for the report and tried to pass blame to her subordinates and the accounting department. This explanation does not excuse her refusal to follow the directives of her supervisor, and it is not sufficient evidence which could convince a reasonable jury that Waite's insubordination was not a true basis for her termination.

The other incident leading to termination had to do with food reviews. Armster asked Waite to schedule food reviews within 10 days and to bring along two of her subordinates when she carried out the reviews. These reviews were to help train the staff members to conduct the reviews themselves in the future. Waite failed to schedule these reviews within the 10-day window proposed by Armster. She then argued that food reviews were not her responsibility, and that Armster must have asked her to schedule them in order to fabricate a reason to fire her. This unsubstantiated claim is not enough to create a material issue of fact. *See State*

*Bank of St. Charles v. Camic*, 712 F.2d 1140, 1145 (7th Cir. 1983) (stating that the claim was "pure speculation and therefore raises no genuine issues of material fact that would preclude summary judgment"). Again, we agree with the district court's conclusion that Waite "simply provides no basis upon which a reasonable judge could doubt the veracity of City Colleges' account of the food review incident or its assessment that Waite was unresponsive and insubordinate to her supervisor." Because Waite could not prove that City Colleges' proffered reasons for terminating her were pretextual, summary judgment was properly granted with respect to the claims arising from her termination.

## III.  Conclusion

For the reasons discussed herein, we find that the district court properly denied City Colleges' motion for judgment as a matter of law with respect to Waite's national origin discrimination claim; and we AFFIRM the judgment on the jury's verdict awarding Waite $15,000 on her national origin claim. We also AFFIRM the district court's grant of summary judgment in favor of City Colleges on Waite's termination claims.

A true Copy:

    Teste:

                          _____

                          *Clerk of the United States Court of Appeals for the Seventh Circuit*